# Exhibit D

**February 13, 2006 HUD Notice of Allocations and Waivers**



**Monday,
February 13, 2006**

Part IV

# Department of Housing and Urban Development

Allocations and Common Application and Reporting Waivers Granted to and Alternative Requirements for CDBG Disaster Recovery Grantees Under the Department of Defense Appropriations Act, 2006; Notice

## DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**[Docket No. FR–5051–N–01]**

**Allocations and Common Application and Reporting Waivers Granted to and Alternative Requirements for CDBG Disaster Recovery Grantees Under the Department of Defense Appropriations Act, 2006**

**AGENCY:** Office of the Secretary, HUD.

**ACTION:** Notice of allocations, waivers, and alternative requirements.

**SUMMARY:** This Notice advises the public of the allocations for grant funds for Community Development Block Grant (CDBG) disaster recovery grants for the purpose of assisting in the recovery in the most impacted and distressed areas related to the consequences of Hurricanes Katrina, Rita, and Wilma in the Gulf of Mexico in 2005. As described in the **SUPPLEMENTARY INFORMATION** section of this Notice, HUD is authorized by statute to waive statutory and regulatory requirements and specify alternative requirements for this purpose, upon the request of the state grantees. This Notice also describes the common application and reporting waivers and the common alternative requirements for the grants. Each State receiving an allocation may request additional waivers from the Department as needed to address the specific needs related to that State's recovery activities.

**DATES:** *Effective Date:* February 13, 2006.

**FOR FURTHER INFORMATION CONTACT:** Jan C. Opper, Director, Disaster Recovery and Special Issues Division, Office of Block Grant Assistance, Department of Housing and Urban Development, Room 7286, 451 Seventh Street, SW., Washington, DC 20410, telephone number (202) 708–3587. Persons with hearing or speech impairments may access this number via TTY by calling the Federal Information Relay Service at (800) 877–8339. FAX inquiries may be sent to Mr. Opper at (202) 401–2044. (Except for the ''800'' number, these telephone numbers are not toll-free.)

**SUPPLEMENTARY INFORMATION:**

### Authority To Grant Waivers

The Department of Defense Appropriations Act, 2006 (Public Law 109–148, approved December 30, 2005) (Appropriations Act) appropriates $11.5 billion in Community Development Block Grant funds for necessary expenses related to disaster relief, long-term recovery, and restoration of infrastructure directly related to the consequences of the covered disasters. The Appropriations Act authorizes the Secretary to waive, or specify alternative requirements for, any provision of any statute or regulation that the Secretary administers in connection with the obligation by the Secretary or use by the recipient of these funds and guarantees, except for requirements related to fair housing, nondiscrimination, labor standards, and the environment, upon a request by the State and a finding by the Secretary that such a waiver would not be inconsistent with the overall purpose of the statute. The following application and reporting waivers and alternative requirements are in response to requests from each of the States receiving an allocation under this Notice.

The Secretary finds that the following waivers and alternative requirements, as described below, are not inconsistent with the overall purpose of Title I of the Housing and Community Development Act of 1974, as amended, or the Cranston-Gonzalez National Affordable Housing Act, as amended.

Under the requirements of the Department of Housing and Urban Development Reform Act of 1989 (the HUD Reform Act), regulatory waivers must be justified and published in the **Federal Register**.

Except as described in this Notice, statutory and regulatory provisions governing the Community Development Block Grant program for states, including those at 24 CFR part 570, shall apply to the use of these funds. In accordance with the appropriations act, HUD will reconsider every waiver in this Notice on the two-year anniversary of the day this Notice is published.

### Additional Waivers

The Department will respond separately to each State's requests for waivers of provisions not covered in this Notice, after working with the State to tailor the program to best meet the unique disaster recovery needs in its impacted areas.

*Allocations*

Public Law 109–148 (effective December 30, 2005) provides $11.5 billion of supplemental appropriation for the CDBG program for:

Necessary expenses related to disaster relief, long-term recovery, and restoration of infrastructure in the most impacted and distressed areas related to the consequences of hurricanes in the Gulf of Mexico in 2005.

The conference report (H.R. Rep. No. 109–359) echoes and expands on this direction, stating:

The conference agreement includes $11,500,000,000 for necessary expenses related to disaster relief, long-term recovery, restoration of infrastructure and mitigation in communities in any declared disaster area in Louisiana, Mississippi, Alabama, Florida, and Texas related to Hurricanes Katrina, Rita or Wilma. * * *

The conference agreement emphasizes the requirement that the States with the most impacted and distressed areas in connection with the Gulf of Mexico hurricanes receive priority consideration in the allocation of funds by HUD.

The law further notes:

That funds provided under this heading shall be administered through an entity or entities designated by the Governor of each State. And that: No state shall receive more than 54 percent of the amount provided under this heading.

Funds allocated are intended by HUD to be used toward meeting unmet housing needs in areas of concentrated distress. ''Unmet housing needs'' is defined to include, but not be limited to, those of uninsured homeowners whose homes had major or severe damage. ''Concentrated distress'' is defined as the total number of housing units with major or severe housing damage in counties where 50 percent or more of units had major or severe damage. As provided for in Public Law 109–148, the funds may not be used for activities reimbursable by or for which funds are made available by the Federal Emergency Management Agency or the Army Corps of Engineers.

The allocations are as follows:

| State | Disaster | Amount |
|---|---|---|
| Alabama | Hurricane Katrina (FEMA–1605–DR) | $74,388,000 |
| Florida | Hurricane Katrina (FEMA–1602–DR), Hurricane Wilma (FEMA–1609–DR) | 82,904,000 |
| Louisiana | Hurricane Katrina (FEMA–1603–DR), Hurricane Rita (FEMA–1607–DR) | 6,210,000,000 |
| Mississippi | Hurricane Katrina (FEMA–1604–DR) | 5,058,185,000 |
| Texas | Hurricane Rita (FEMA–1606–DR) | 74,523,000 |

HUD will invite each grantee named above to submit an Action Plan for Disaster Recovery in accordance with this Notice.

The appropriations statute requires funds be used only for disaster relief, long-term recovery, and restoration of infrastructure in the most impacted and distressed areas related to the consequences of hurricanes in the Gulf of Mexico in 2005. The statute directs that each grantee will describe in its Action Plan for Disaster Recovery how the use of the grant funds will address long-term recovery and infrastructure restoration. HUD will monitor compliance with this direction and may be compelled to disallow expenditures if it finds uses of funds are not disaster-related, or funds allocated duplicate other benefits. HUD encourages grantees to contact their assigned HUD offices for guidance in complying with these requirements during development of their Action Plans for Disaster Recovery or if they have any questions regarding meeting these requirements.

*Prevention of Fraud, Abuse, and Duplication of Benefits*

The statute also directs the Secretary to:

Establish procedures to prevent recipients from receiving any duplication of benefits and report quarterly to the Committees on Appropriations with regard to all steps taken to prevent fraud and abuse of funds made available under this heading including duplication of benefits.

To meet this directive, HUD is pursuing four courses of action. First, this Notice includes specific reporting, written procedures, monitoring, and internal audit requirements for grantees. Second, to the extent its resources allow, HUD will institute risk analysis and on-site monitoring of grantee management of the grants and of the specific uses of funds. Third, HUD will be extremely cautious in considering any waiver related to basic financial management requirements. The standard, time-tested CDBG financial requirements will continue to apply. Fourth, HUD is collaborating with the HUD Office of Inspector General to plan and implement oversight of these funds.

*Waiver Justification*

This section of the Notice briefly describes the basis for each waiver and related alternative requirements, if any.

The waivers, alternative requirements, and statutory changes described in this Notice apply only to the CDBG supplemental disaster recovery funds appropriated in Public Law 109–148, not to funds provided under the regular CDBG program. These actions provide additional flexibility in program design and implementation and implement statutory requirements unique to this appropriation.

**Application for Allocation**

These waivers and alternative requirements streamline the pre-grant process and set the guidelines for the State's application for its allocation. HUD encourages each of the five eligible grantees to submit an Action Plan for Disaster Recovery to HUD within 60 days of the publication date of this Notice.

*Overall benefit to low- and moderate-income persons.* Pursuant to explicit authority in the appropriations act, HUD is granting an overall benefit waiver that allows for up to 50 percent of the grant to assist activities under the urgent need or prevention or elimination of slums and blight national objectives, rather than the 30 percent allowed in the annual State CDBG program. The primary objective of Title I of the Housing and Community Development Act and of the funding program of each grantee is "development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income." The statute goes on to set the standard of performance for this primary objective at 70 percent of the aggregate of the funds used for support of activities producing benefit to low- and moderate-income persons. Since extensive damage to community development and housing affected those with varying incomes, and income-producing jobs are often lost for a period of time following a disaster, HUD is waiving the 70 percent overall benefit requirement, leaving the 50 percent requirement, to give grantees even greater flexibility to carry out recovery activities within the confines of the CDBG program national objectives. HUD may only provide additional waivers of this requirement if it makes a finding of compelling need. The requirement that each activity meet one of the three national objectives is not waived.

*Expanded distribution and direct action.* The waivers and alternative requirements allowing distribution of funds by a state to entitlement communities and Indian tribes, and to allow a state to carry out activities directly rather than distribute all funds to units of local government are consistent with waivers granted for previous similar disaster recovery cases. HUD believes that, in recommending the Lower Manhattan Development Corporation (LMDC) as a model and in increasing the administrative cap, Congress is signaling its intent that the States under this appropriation also be able to carry out activities directly. Therefore, HUD is waiving program requirements to support this. HUD is also including in this Notice the necessary complementary waivers and alternative requirements related to subrecipients to ensure proper management and disposition of funds during the grant execution and at closeout.

*Consistency with the consolidated plan.* HUD is waiving the requirement for consistency with the consolidated plan because the effects of a major disaster usually alter a grantee's priorities for meeting housing, employment, and infrastructure needs. To emphasize that uses of grant funds must be consistent with the overall purposes of the Housing and Community Development Act of 1974, HUD is limiting the scope of the waiver for consistency with the consolidated plan; it applies only until the grantee first updates its consolidated plan priorities following the disaster.

*Action Plan for Disaster Recovery.* HUD is waiving the CDBG action plan requirements and substituting an Action Plan for Disaster Recovery. This will allow rapid implementation of disaster recovery grant programs and ensure conformance with provisions of the Appropriations Act. Where possible, the Action Plan for Disaster Recovery, including certifications, does not repeat common action plan elements the grantee has already committed to carry out as part of its annual CDBG submission. Although a State as the grantee may designate an entity or entities to administer the funds, the State is responsible for compliance with Federal requirements. During the course of the grant, HUD will monitor the State's use of funds *and* its actions for consistency with the Action Plan. The State may submit an initial partial Action Plan and amend it one or more times subsequently until the Action Plan describes uses for the total grant amount. The State may also amend activities in its Action Plan.

*Citizen participation.* The citizen participation waiver and alternative requirements will permit a more streamlined public process, but one that still provides for reasonable public notice, appraisal, examination, and comment on the activities proposed for the use of CDBG disaster recovery grant funds. The waiver removes the requirement at both the grantee and state grant recipient levels for public hearings or meetings as the method for disseminating information or collecting

citizen comments. Instead, grantees are encouraged to employ innovative methods to communicate with citizens and solicit their views on proposed uses of disaster recovery funds, and to indicate in the Action Plan how it has addressed these views.

*Administration limitation.* State program administration requirements must be modified to be consistent with the appropriations act, which allows up to five percent of the grant to be used for the State's administrative costs. The provisions at 42 U.S.C. 5306(d) and 24 CFR 570.489(a)(1)(i) and (iii) will not apply to the extent that they cap State administration expenditures and require a dollar for dollar match of State funds for administrative costs exceeding $100,000. HUD does not waive 24 CFR 570.489(a)(3) to allow the State to exceed the overall planning, management and administrative cap of 20 percent.

### Use of Subrecipients

The State CDBG program rule does not make specific provision for the treatment of the entities called ''subrecipients'' in the CDBG entitlement program. The waiver allowing the state to carry out activities directly creates a situation in which the state may use subrecipients to carry out activities in a manner similar to entitlement communities. HUD and its Office of Inspector General have long identified the use of subrecipients as a practice that increases the risk of abuse of funds. HUD's experience is that this risk can be successfully managed by following the CDBG entitlement requirements and related guidance. Therefore, HUD is requiring that a state taking advantage of the waiver allowing it to carry out activities directly must follow the alternative requirements drawn from the CDBG entitlement rule and specified in this Notice when using subrecipients.

### Reporting

HUD is waiving the annual reporting requirement because the Congress requires quarterly reports from the grantees and from HUD on various aspects of the uses of funds and of the activities funded with these grants. Many of the data elements the grantees will report to Congress quarterly are the same as those that HUD will use to exercise oversight for compliance with the requirements of this Notice and for prevention of fraud, abuse of funds, and duplication of benefits. To collect these data elements and to meet its reporting requirements, HUD is requiring each grantee to report to HUD quarterly using the online Disaster Recovery Grant Reporting system, which has just converted to a streamlined, re-engineered, Internet-based format. HUD will use grantee reports to monitor for anomalies or performance problems that suggest fraud, abuse of funds, and duplication of benefits; to reconcile budgets, obligations, fund draws, and expenditures; and to calculate applicable administrative and public service limitations and the overall percent of benefit to low- and moderate-income persons, and as a basis for risk analysis in determining a monitoring plan.

After HUD reviews each report and accepts a report, the grantee must post the report on a Web site for its citizens. If a grantee chooses, it may use this report, together with a statement regarding any sole source procurements, as its required quarterly submission to the Committees on Appropriations. Each quarter, HUD will submit to the Committees a summary description of its report reviews, other HUD monitoring and technical assistance activities undertaken during the quarter, and any significant conclusions related to fraud or abuse of funds or duplication of benefits.

### Certifications

HUD is waiving the standard certifications and substituting alternative certifications. The alternative certifications are tailored to CDBG disaster recovery grants and remove certifications and references that are redundant or appropriate to the annual CDBG formula program.

### Applicable Rules, Statutes, Waivers, and Alternative Requirements

*Pre-Grant Process*

1. *General note.* Prerequisites to a grantee's receipt of CDBG disaster recovery assistance include adoption of a citizen participation plan; publication of its proposed Action Plan for Disaster Recovery; public notice and comment; and submission to HUD of an Action Plan for Disaster Recovery, including certifications. Except as described in this Notice, statutory and regulatory provisions governing the Community Development Block Grant program for states, including those at 42 U.S.C. 5301 *et seq.* and 24 CFR part 570, shall apply to the use of these funds.

2. *Overall benefit waiver and alternative requirement.* The requirements at 42 U.S.C. 5301(c), 42 U.S.C. 5304(b)(3)(A), and 24 CFR 570.484 that 70 percent of funds are for activities that benefit low- and moderate-income persons are waived to stipulate that at least 50 percent of disaster recovery grant funds are for activities that principally benefit low- and moderate-income persons.

3. *Direct grant administration by States and means of carrying out eligible activities.* Requirements at 42 U.S.C. 5306 are waived to the extent necessary to allow the State to use its disaster recovery grant allocation directly to carry out state-administered activities eligible under this Notice. Activities eligible under this Notice may be undertaken, subject to State law, by the recipient through its employees, or through procurement contracts, or through loans or grants under agreements with subrecipients, or by one or more entities that are designated by the chief executive officer of the State. Activities made eligible under section 105(a)(15) of the Housing and Community Development Act of 1974, as amended, may only be undertaken by entities specified in that section, whether the assistance is provided to such an entity from the State or from a unit of general local government.

4. *Consolidated Plan waiver.* Requirements at 42 U.S.C. 12706 and 24 CFR 91.325(a)(6), that housing activities undertaken with CDBG funds be consistent with the strategic plan, are waived. Further, 42 U.S.C. 5304(e), to the extent that it would require HUD to annually review grantee performance under the consistency criteria, is also waived. These waivers apply only until the time that the grantee first updates the consolidated plan priorities following the disaster.

5. *Citizen participation waiver and alternative requirement.* Provisions of 42 U.S.C. 5304(a)(2) and (3), 42 U.S.C. 12707, 24 CFR 570.486, and 24 CFR 91.115(b) with respect to citizen participation requirements are waived and replaced by the requirements below. The streamlined requirements do not mandate public hearings at either the state or local government level, but do require providing a reasonable opportunity for citizen comment and ongoing citizen access to information about the use of grant funds. The streamlined citizen participation requirements for this grant are:

a. Before the grantee adopts the action plan for this grant or any substantial amendment to this grant, the grantee will publish the proposed plan or amendment (including the information required in this Notice for an Action Plan for Disaster Recovery). The manner of publication (including prominent posting on the state, local, or other relevant website) must afford citizens, affected local governments and other interested parties a reasonable opportunity to examine the plan or

amendment's contents. Subsequent to publication, the grantee must provide a reasonable time period and method(s) (including electronic submission) for receiving comments on the plan or substantial amendment. The grantee's plans to minimize displacement of persons or entities and to assist any persons or entities displaced must be published with the action plan.

b. In the action plan, each grantee will specify its criteria for determining what changes in the grantee's activities constitute a substantial amendment to the plan. At a minimum, adding or deleting an activity or changing the planned beneficiaries of an activity will constitute a substantial change. The grantee may modify or substantially amend the action plan if it follows the same procedures required in this Notice for the preparation and submission of an Action Plan for Disaster Recovery. The grantee must notify HUD, but is not required to notify the public, when it makes any plan amendment that is not substantial.

c. The grantee must consider all comments received on the action plan or any substantial amendment and submit to HUD a summary of those comments and the grantee's response with the action plan or substantial amendment.

d. The grantee must make the action plan, any substantial amendments, and all performance reports available to the public. HUD recommends posting them on the Internet. In addition, the grantee must make these documents available in a form accessible to persons with disabilities and non-English-speaking persons. During the term of this grant, the grantee will provide citizens, affected local governments, and other interested parties reasonable and timely access to information and records relating to the action plan and the grantee's use of this grant.

e. The grantee will provide a timely written response to every citizen complaint. Such response will be provided within 15 working days of the receipt of the complaint, if practicable.

6. *Modify requirement for consultation with local governments.* Currently, the statute and regulations require consultation with affected units of local government in the non-entitlement area of the State regarding the State's proposed method of distribution. HUD is waiving 42 U.S.C. 5306(d)(2)(C)(iv), 24 CFR 91.325(b), and 24 CFR 91.110, with the alternative requirement that the State consult with all disaster-affected units of general local government, including any CDBG entitlement communities, in determining the use of funds.

7. *Action Plan waiver and alternative requirement.* The requirements at 42 U.S.C. 12705(a)(2), 42 U.S.C. 5304(a)(1), 42 U.S.C. 5304(m), 42 U.S.C. 5306(d)(2)(C)(iii), 24 CFR 1003.604, and 24 CFR 91.320 are waived for these disaster recovery grants. Each State must submit to HUD an Action Plan for Disaster Recovery that describes:

a. The effects of the covered disaster, especially in the most impacted areas and populations, and the greatest recovery needs resulting from the covered disaster that have not been addressed by insurance proceeds, other federal assistance or any other funding source;

b. The grantee's overall plan for disaster recovery including:

(i) How the State will promote sound short and long-term recovery planning at the state and local levels, especially land use decisions that reflect responsible flood plain management, removal of regulatory barriers to reconstruction, and prior coordination with planning requirements of other State and Federal programs and entities;

(ii) How the State will encourage construction methods that emphasize high quality, durability, energy efficiency, and mold resistance including how the State will promote enactment and enforcement of modern building codes and mitigation of flood risk where appropriate;

(iii) How the State will provide or encourage provision of adequate, flood-resistant housing for all income groups that lived in the disaster impacted areas prior to the incident date(s) of the applicable disaster(s), including a description of the activities it plans to undertake to address emergency shelter and transitional housing needs of homeless individuals and families (including subpopulations), to prevent low-income individuals and families with children (especially those with incomes below 30 percent of median) from becoming homeless, to help homeless persons make the transition to permanent housing and independent living, and to address the special needs of persons who are not homeless identified in accordance with 24 CFR 91.315(d);

c. Monitoring standards and procedures that are sufficient to ensure program requirements, including non-duplication of benefits, are met and that provide for continual quality assurance, investigation, and internal audit functions, with responsible staff reporting independently to the Governor of the State or, at a minimum, to the chief officer of the governing body of any designated administering entity;

d. A description of the steps the State will take to avoid or mitigate occurrences of fraud, abuse, and mismanagement, especially with respect to accounting, procurement, and accountability, with a description of how the State will provide for increasing the capacity for implementation and compliance of local governments, subrecipients, subgrantees, contractors, and any other entity responsible for administering activities under this grant; and

e. The state's method of distribution. The method of distribution shall include descriptions of the method of allocating funds to units of local government and of specific projects the state will carry out directly, as applicable. The descriptions will include:

(i) When funds are to be allocated to units of local government, all criteria used to select applications from local governments for funding, including the relative importance of each criterion, and including a description of how the disaster recovery grant resources will be allocated among all funding categories and the threshold factors and grant size limits that are to be applied; and

(ii) When the State will carry out activities directly, the projected uses for the CDBG disaster recovery funds by responsible entity, activity, and geographic area;

(iii) How the method of distribution or use of funds described in accordance with the above subparagraphs will result in eligible uses of grant funds related to long-term recovery from specific effects of the disaster(s) or restoration of infrastructure; and

(iv) Sufficient information so that citizens, units of general local government and other eligible subgrantees or subrecipients will be able to understand and comment on the action plan and, if applicable, be able to prepare responsive applications to the State.

f. Required certifications (see the applicable Certifications section of this Notice); and

g. A completed and executed Federal form SF–424.

8. *Allow reimbursement for pre-agreement costs.* The provisions of 24 CFR 570.489(b) are applied to permit a grantee to reimburse itself for otherwise allowable costs incurred on or after the incident date of the covered disaster.

9. *Clarifying note on the process for environmental release of funds when a State carries out activities directly.* Usually, a State distributes CDBG funds to units of local government and takes on HUD's role in receiving environmental certifications from the

grant recipients and approving releases of funds. For this grant, HUD will allow a State grantee to also carry out activities directly instead of distributing them to other governments. According to the environmental regulations at 24 CFR 58.4, when a State carries out activities directly, the State must submit the certification and request for release of funds to HUD for approval.

10. *Duplication of benefits.* In general, 42 U.S.C. 5155 (section 312 of the Robert T. Stafford Disaster Assistance and Emergency Relief Act, as amended) prohibits any person, business concern, or other entity from receiving financial assistance with respect to any part of a loss resulting from a major disaster as to which he has received financial assistance under any other program or from insurance or any other source. The Appropriations Act stipulates that funds may not be used for activities reimbursable by or for which funds have been made available by the Federal Emergency Management Agency or by the Army Corps of Engineers.

11. *Waiver and alternative requirement for distribution to CDBG metropolitan cities and urban counties.*

a. Section 5302(a)(7) of title 42, U.S.C. (definition of ''nonentitlement area'') and provisions of 24 CFR part 570 that would prohibit a state from distributing CDBG funds to units of general local government in entitlement communities and to Indian tribes, are waived, including 24 CFR 570.480(a), to the extent that such provisions limit the distribution of funds to units of general local government located in entitlement areas and to State or Federally recognized Indian tribes. The state is required instead to distribute funds to the most affected and impacted areas related to the consequences of the covered disaster(s) without regard to a local government or Indian tribe status under any other CDBG program.

b. Additionally, because a State grantee under this appropriation may carry out activities directly, HUD is applying the regulations at 24 CFR 570.480(c) with respect to the basis for HUD determining whether the State has failed to carry out its certifications so that such basis shall be that the State has failed to carry out its certifications in compliance with applicable program requirements. Also, 24 CFR 570.494 regarding timely distribution of funds is waived. However, HUD expects each State grantee to expeditiously obligate and expend all funds, including any recaptured funds or program income, and to carry out activities in a timely manner.

12. *Note that use of grant funds must relate to the covered disaster(s).* In addition to being eligible under 42 U.S.C. 5305(a) or this Notice and meeting a CDBG national objective, the Appropriations Act requires that activities funded under this Notice must also be for necessary expenses related to disaster relief, long-term recovery, and restoration of infrastructure in the most impacted and distressed areas related to the consequences of the hurricanes in communities included in Presidential disaster declarations.

13. *Note on change to administration limitation.* Up to five percent of the grant amount may be used for the State's administrative costs. The provisions of 42 U.S.C. 5306(d) and 24 CFR 570.489(a)(1)(i) and (iii) will not apply to the extent that they cap State administration expenditures and require a dollar for dollar match of State funds for administrative costs exceeding $100,000. HUD does not waive 24 CFR 570.489(a)(3) to allow the State to exceed the overall planning, management and administrative cap of 20 percent.

*Reporting*

14. *Waiver of performance report and alternative requirement.* The requirements for submission of a Performance Evaluation Report (PER) pursuant to 42 U.S.C.12708 and 24 CFR 91.520 are waived. The alternative requirement is that—

a. Each grantee must submit its Action Plan for Disaster Recovery, including performance measures, into HUD's Web-based Disaster Recovery Grant Reporting (DRGR) system. (The signed certfications and the SF–424 must be submitted in hard copy.) As additional detail about uses of funds becomes available to the grantee, the grantee must enter this detail into DRGR, in sufficient detail to serve as the basis for acceptable performance reports.

b. Each grantee must submit a quarterly performance report, as HUD prescribes, no later than 30 days following each calendar quarter, beginning after the first full calendar quarter after grant award and continuing until all funds have been expended and all expenditures reported. Each quarterly report will include information about the uses of funds during the applicable quarter including (but not limited to) the project name, activity, location, and national objective, funds budgeted, obligated, drawn down, and expended; the funding source and total amount of any non-CDBG disaster funds; beginning and ending dates of activities; and performance measures such as numbers of low- and moderate-income persons or households benefiting. Quarterly reports to HUD must be submitted using HUD's Web-based DRGR system.

15. *Use of subrecipients.* The following alternative requirement applies for any activity that a state carries out directly by funding a subrecipient:

a. 24 CFR 570.503, except that specific references to 24 CFR parts 84 and 85 need not be included in subrecipient agreements.

b. 570.502(b).

16. *Recordkeeping.* Recognizing that the State may carry out activities directly, 24 CFR 570.490(b) is waived in such a case and the following alternative provision shall apply: State records. The State shall establish and maintain such records as may be necessary to facilitate review and audit by HUD of the State's administration of CDBG disaster recovery funds under 24 CFR 570.493. Consistent with applicable statutes, regulations, waivers and alternative requirements, and other Federal requirements, the content of records maintained by the State shall be sufficient to: enable HUD to make the applicable determinations described at 24 CFR 570.493; make compliance determinations for activities carried out directly by the state; and show how activities funded are consistent with the descriptions of activities proposed for funding in the action plan. For fair housing and equal opportunity purposes, and as applicable, such records shall include data on the racial, ethnic, and gender characteristics of persons who are applicants for, participants in, or beneficiaries of the program.

17. *Change of use of real property.* This waiver conforms the change of use of real property rule to the waiver allowing a State to carry out activities directly. For purposes of this program, in 24 CFR 570.489(j), (j)(1), and the last sentence of (j)(2), ''unit of general local government'' shall be read as '''unit of general local government or State.''

18. *Responsibility for State review and handling of noncompliance.* This change conforms the rule with the waiver allowing the State to carry out activities directly. 24 CFR 570.492 is waived and the following alternative requirement applies: The State shall make reviews and audits including on-site reviews of any subrecipients, designated public agencies, and units of general local government as may be necessary or appropriate to meet the requirements of section 104(e)(2) of the Housing and Community Development Act of 1974, as amended, as modified by this Notice. In the case of noncompliance with these requirements, the State shall take such

Federal Register / Vol. 71, No. 29 / Monday, February 13, 2006 / Notices          7671

actions as may be appropriate to prevent a continuance of the deficiency, mitigate any adverse effects or consequences and prevent a recurrence. The State shall establish remedies for noncompliance by any designated public agencies or units of general local governments and for its subrecipients.

19. *Information collection approval note.* HUD has approval for information collection requirements in accordance with the Paperwork Reduction Act of 1995 (44 U.S.C. 3501–3520) under OMB control number 2506–0165, which expires August 31, 2007. In accordance with the Paperwork Reduction Act, HUD may not conduct or sponsor, nor is a person required to respond to, a collection of information unless the collection displays a valid control number.

*Certifications*

20. *Certifications for state governments, waiver and alternative requirement.* Section 91.325 of title 24 Code of Federal Regulations is waived. Each state must make the following certifications prior to receiving a CDBG disaster recovery grant:

a. The state certifies that it will affirmatively further fair housing, which means that it will conduct an analysis to identify impediments to fair housing choice within the state, take appropriate actions to overcome the effects of any impediments identified through that analysis, and maintain records reflecting the analysis and actions in this regard. (See 24 CFR 570.487(b)(2)(ii).)

b. The state certifies that it has in effect and is following a residential anti-displacement and relocation assistance plan in connection with any activity assisted with funding under the CDBG program.

c. The state certifies its compliance with restrictions on lobbying required by 24 CFR part 87, together with disclosure forms, if required by that part.

d. The state certifies that the Action Plan for Disaster Recovery is authorized under state law and that the state, and any entity or entities designated by the State, possesses the legal authority to carry out the program for which it is seeking funding, in accordance with applicable HUD regulations and this Notice.

e. The state certifies that it will comply with the acquisition and relocation requirements of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, as amended, and implementing regulations at 49 CFR part 24, except where waivers or alternative requirements are provided for this grant.

f. The state certifies that it will comply with section 3 of the Housing and Urban Development Act of 1968 (12 U.S.C. 1701u), and implementing regulations at 24 CFR part 135.

g. The state certifies that it is following a detailed citizen participation plan that satisfies the requirements of 24 CFR 91.115 (except as provided for in notices providing waivers and alternative requirements for this grant), and that each unit of general local government that is receiving assistance from the state is following a detailed citizen participation plan that satisfies the requirements of 24 CFR 570.486 (except as provided for in notices providing waivers and alternative requirements for this grant).

h. The state certifies that it has consulted with affected units of local government in counties designated in covered major disaster declarations in the nonentitlement, entitlement and tribal areas of the state in determining the method of distribution of funding;

i. The state certifies that it is complying with each of the following criteria:

(1) Funds will be used solely for necessary expenses related to disaster relief, long-term recovery, and restoration of infrastructure in the most impacted and distressed areas related to the consequences of the Gulf Coast hurricanes of 2005 in communities included in Presidential disaster declarations.

(2) With respect to activities expected to be assisted with CDBG disaster recovery funds, the action plan has been developed so as to give the maximum feasible priority to activities that will benefit low- and moderate-income families.

(3) The aggregate use of CDBG disaster recovery funds shall principally benefit low- and moderate-income families in a manner that ensures that at least 50 percent of the amount is expended for activities that benefit such persons during the designated period.

(4) The state will not attempt to recover any capital costs of public improvements assisted with CDBG disaster recovery grant funds, by assessing any amount against properties owned and occupied by persons of low- and moderate-income, including any fee charged or assessment made as a condition of obtaining access to such public improvements, unless (A) disaster recovery grant funds are used to pay the proportion of such fee or assessment that relates to the capital costs of such public improvements that are financed from revenue sources other than under this title; or (B) for purposes of assessing any amount against properties owned and occupied by persons of moderate income, the grantee certifies to the Secretary that it lacks sufficient CDBG funds (in any form) to comply with the requirements of clause (A).

j. The state certifies that the grant will be conducted and administered in conformity with title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d) and the Fair Housing Act (42 U.S.C. 3601–3619) and implementing regulations.

k. The state certifies that it has and that it will require units of general local government that receive grant funds to certify that they have adopted and are enforcing:

(1) A policy prohibiting the use of excessive force by law enforcement agencies within its jurisdiction against any individuals engaged in non-violent civil rights demonstrations; and

(2) A policy of enforcing applicable state and local laws against physically barring entrance to or exit from a facility or location that is the subject of such non-violent civil rights demonstrations within its jurisdiction.

l. The state certifies that each state grant recipient or administering entity has the capacity to carry out disaster recovery activities in a timely manner, or the state has a plan to increase the capacity of any state grant recipient or administering entity who lacks such capacity.

m. The state certifies that it will not use CDBG disaster recovery funds for any activity in an area delineated as a special flood hazard area in FEMA's most current flood advisory maps unless it also ensures that the action is designed or modified to minimize harm to or within the floodplain in accordance with Executive Order 11988 and 24 CFR part 55.

n. The state certifies that it will comply with applicable laws.

*Duration of Funding*

Availability of funds provisions in 31 U.S.C. 1551–1557, added by section 1405 of the National Defense Authorization Act for Fiscal Year 1991 (Public Law 101–510), limit the availability of certain appropriations for expenditure. This limitation may not be waived. However, the Appropriations Act for these grants directs that these funds be available until expended unless, in accordance with 31 U.S.C. 1555, the Department determines that the purposes for which the appropriation has been made have been carried out and no disbursement has been made against the appropriation for two consecutive fiscal years. In such

case, the Department shall close out the grant prior to expenditure of all funds.

*Catalog of Federal Domestic Assistance*

The Catalog of Federal Domestic Assistance numbers for the disaster recovery grants under this Notice are as follows: 14.219; 14.228.

*Finding of No Significant Impact*

A Finding of No Significant Impact (FONSI) with respect to the environment has been made in accordance with HUD regulations at 24 CFR part 50, which implement section 102(2)(C) of the National Environmental Policy Act of 1969 (42 U.S.C. 4332). The FONSI is available for public inspection between 8 a.m. and 5 p.m. weekdays in the Office of the Rules Docket Clerk, Office of General Counsel, Department of Housing and Urban Development, Room 10276, 451 Seventh Street, SW., Washington, DC 20410–0500.

Dated: February 3, 2006.

**Pamela H. Patenaude,**

*Assistant Secretary for Community Planning and Development.*

[FR Doc. 06–1357 Filed 2–9–06; 2:51 pm]

**BILLING CODE 4210–67–P**