# Exhibit ee

**The Road Home Homeowner Program Policies, Version 7.0**



# *The Road Home* Homeowner Program Policies
## Version 7.0

## April 15, 2010

Presented to:

**State of Louisiana**
**The Office of Community Development**

 **Homeowner Program Policies Version 7.0**

### THE ROAD HOME APPLICANT POLICIES
### *Louisiana Road Home Program*
### Version Control

| Version Number | Date Revised | Description of Revisions |
|---|---|---|
| 6.0 | 7/9/08 | 1. *Superfund:* Applicants with damaged residences located in the Superfund site in the Agriculture Street contour are eligible for Option 1 assistance and cannot choose Option 2 or 3. These applicants sign a special rider to the covenant that does not require the applicant to reoccupy the property.<br><br>2. *FEMA eligibility criteria for mobile homes:* Explains the FEMA eligibility criteria specific to mobile homes.<br><br>3. *Insurance documentation to Support FEMA Eligibility:* In some cases applicants can provide flood insurance documentation to support FEMA damage eligibility.<br><br>4. *PSV Policies:* Corrected an oversight from last iteration regarding review of applicant submitted post-storm appraisals.<br><br>5. *Submission of Post-Storm Appraisals:* As of May 23, 2008, applicants may only submit one-post storm appraisal.<br><br>6. *PSV and Resolution:* Deleted reference to Resolution process in the PSV section of the policies.<br><br>7. *Leased Land Not Eligible for Elevation Incentive:* Applicants who owned a mobile home or site built home on leased land at the time of the storm are not eligible for an Elevation Incentive.<br><br>8. *Superfund Applicants Not Eligible for Elevation Incentive:* Applicants located in the Superfund site on Agriculture Street are not eligible for an Elevation Incentive.<br><br>9. *Assignees eligible for Elevation Incentive:* Assignees can receive an elevation incentive for damaged property purchased from eligible owner-occupant at time of the storm.<br><br>10. *Elevation incentive for applicants sharing common area with another property:* Outlines under what circumstances that these applicants are eligible for the elevation incentive.<br><br>11. *Elevation incentive for mobile home additions:* Site built homes with mobile home additions receive an elevation allowance of $20,000 and mobile homes with site built additions receive an elevation allowance of $20,000. |
| 6.1 | 11/6/08 | 12. *Manufactured Home Supporting Ownership Documentation:* Insurance policy for the manufactured home must cover the structure; contents insurance policy is not accepted.<br><br>13. *Manufactured Home Ownership and Occupancy Self Certification Affidavit:* Applicants may submit an ownership and occupancy self-certification affidavit if they cannot provide any other form of ownership and occupancy documentation.<br><br>14. *Mobile homes on owned land and sale of land:* Mobile home applicants on owned land who sold their land are placed in |



Homeowner Program Policies Version 7.0

|  |  |  |
|---|---|---|
|  |  | inactive status. |
|  |  | 15. *ICC and elevation calculation:* There is no ICC deduction in the elevation calculation.  This is corrected in this version of the policies. |
|  |  | 16. *Assignees and Appeals:* Assignees are not allowed to submit appeals to *The Road Home* or to the State of Louisiana Office of Community Development. |
|  |  | 17. *Assignment and Mobile and Site Built Homeowners on Leased Land:* Mobile and site built homeowners on leased land are not eligible to assign their rights. |
|  |  | 18. *Mobile homes with additions and pre-storm value:* Policies for determining pre-storm value for mobile homes with additions. |
|  |  | 19. *Applicants who sold home prior to launch of Road Home:* Applicants who sold home prior to launch of RH are eligible for RH benefits. |
|  |  | 20. *City directory as occupancy documentation:* Applicants may submit a copy of the city directory from the time of the storm that lists the applicant residing at the damaged residence address as proof of occupancy. |
|  |  | 21. *Transfer of ownership back to eligible owner-occupant:* Describes the policies for eligibility when there has been a transfer of ownership back to eligible owner-occupant since the storm. |
|  |  | 22. *Grant review and additional disbursements:* Additional disbursements in post-closing will be provided if additional disbursement is over $50. |
|  |  | 23. *Deadline for submission of Benefit Election Letter:* Deadline for submission of Benefit Election Letter was November 1, 2008. |
|  |  | 24. *Elevation Incentive and Structure Type:* The elevation incentive award amount is based on the structure at the time of the storm and not the type of structure may be built to replace the damaged structure. |
| 6.2 | 4/13/09 | 25. *Estimated Cost of Damage for Mobile Homes on Leased Land:* Deleted reference to assumption that mobile homes on leased land assumed to be more than 51% damaged since in some cases it may be evaluated as a Type 2. |
|  |  | 26. *Elevation Incentive Program and Lease-to-Own Applicants:* Applicants in a lease to own situation at the time of the storm who subsequently obtain full ownership of the property, whether before or after their *Road Home* closing are eligible for the elevation incentive. |
|  |  | 27. *Decline Compensation and/or ACG and Accept Elevation Incentive:* An applicant has the option to accept and receive elevation funding from *The Road Home* program even if the applicant chooses to decline the compensation and/or ACG portion of their grant. |
|  |  | 28. *Self-Certification of No Elevation Prior to Storm:* Applicants |



Homeowner Program Policies Version 7.0

are not eligible to receive an elevation incentive if the home was elevated at the time of storm to a level that was in compliance with FEMA flood maps. Elevation prior to the storm is self-certified by the applicant as evidenced by the applicant's signature on the Elevation Grant Agreement and is not verified by *The Road Home* in any other way.

29. *Revoking Assignment:* If an assignor or assignee wants to revoke an assignment that has been executed and submitted to *The Road Home* program the assignee and assignor must provide a legal document signed by both that officially rescinds the assignment.

30. *Number of Disbursements:* Explains the policies regarding number of disbursements.

31. *Clarification to Amount of Funding Per Applicant:* An eligible applicant's funding assistance cannot exceed $150,000 per damaged residence address.

32. *Applicants who sold home prior to August 29, 2007:* Sold home program is expanded to applicants who sold home prior to August 29, 2007.

33. *The Road Home* Mobile Home Ownership Affidavit: Clarified that *The Road Home* Mobile Home Ownership Affidavit is a separate form from the MHOOCA and MHOOSCA and must be notarized.

34. *ICC and Additional Compensation Grant:* Clarified that ICC is deducted from Option 1 ACG in some cases and not deducted from elevation incentive.

35. *Elevation Incentive Deadline:* The deadline to submit a letter expressing interest in receiving an elevation incentive was December 5, 2008.

36. *Mobile home applicants who sold land:* The Sold Home policies apply to mobile home applicants who sold land.



Homeowner Program Policies Version 7.0

| 7.0 | 4/15/10 | 37. *Murphy Oil:* Owners who are located in the Murphy Buy Out Zone may choose to have their home purchased by Murphy Oil.  Applicants who choose to have their home purchased by Murphy Oil are eligible for assistance from The Road Home under the Sold Home Program.<br>38. *Elevation Incentive Deadline Extensions:* Review and approval of request from applicants to be considered for an Elevation Incentive after the deadline will be completed on a case-by-case basis.<br>39. *Covenant Extension Requests* - Allows Option 1 grant recipients to request a one (1) year extension to comply with covenant requirements.<br>40. *Removal of Additional Compensation Grant (AACG) Cap for Option 1 Applicants.*<br>41. *Road Home Grant Recipients Participating in FEMA's Severe Repetitive Loss Program (SRL).*<br>42. *Disabled Exemption from Penalty associated with Option 3*<br>43. *Proof of occupancy*  - As proof of occupancy at the time of the storm, applicants are allowed to submit a driver's license which was valid at the time of the storm along with a signed affidavit certifying that the homeowner was residing at the residence at the time of the storm. |
| --- | --- | --- |



Homeowner Program Policies Version 7.0

---

### Table of Contents

1     Eligibility Requirements to Apply for Program ................................1
1.1    Parish ........................................................................................... 1
1.2    Owner Occupancy.......................................................................... 1
1.2.1   Ownership ...................................................................................... 1
1.2.2   Occupancy ..................................................................................... 1
1.3    Structure Type ............................................................................... 2
1.4    FEMA Registration and Categorization........................................... 3
1.4.1   Definition ........................................................................................ 3
1.4.2   Stick Built Home Methodology ....................................................... 3
1.4.3   Manufactured Home Methodology ................................................. 5
1.4.4   Condominium Methodology............................................................ 6

2     Ownership ..........................................................................................7
2.1    Option 1 Ownership for Applicants on Owned Land........................ 7
2.2    Option 2 and 3 Ownership for Applicants on Owned Land.............. 7
2.3    Special Circumstances Related to Type of Ownership .................... 7
2.3.1   LLC ................................................................................................ 7
2.3.2   Reverse Mortgage.......................................................................... 7
2.3.3   Owned land with other individuals................................................. 7
2.3.4   Purchase Contracts........................................................................ 7
2.3.5   Usufruct ......................................................................................... 8
2.3.6   Act of Donation .............................................................................. 8
2.3.7   Trust .............................................................................................. 9
2.4    Special Circumstances Related to Ownership Identity .................... 9
2.4.1   Death of eligible owner occupant ................................................... 9
2.4.2   2 Applications from 1 Person Due to Death of Owner-Occupant .... 10
2.4.3   Incapacity or infirmity of applicant ................................................. 11
2.5    Special Circumstances Related to Current Ownership.................... 11
2.6    Transfer of ownership back to eligible owner occupant .................. 11
2.7    Site built homes on leased land ..................................................... 12
2.8    Manufactured Housing (Mobile Homes) on leased land ................. 12
2.9    Mobile Home on Owned and Leased Land Ownership and Occupancy Forms............... 13
2.10   Double Unit (Duplex) Ownership Situations ................................... 14
2.11   Title Clearance .............................................................................. 14

3     Eligibility Requirements to Receive Assistance ...................................14

4     Deadlines Established for *The Road Home*........................................15
4.1    Deadlines ....................................................................................... 15
4.2    Special Circumstances related to deadlines and editing applications ............................ 15

5     Withdrawn Applications.......................................................................15

6     Applicant's Assistance Options ...........................................................15
6.1    If applicant owns the land and continues to own it at time of closing............................. 15
6.1.1   Option 1: Stay................................................................................ 16

---



Homeowner Program Policies Version 7.0

6.1.2    Option 2: Buyout and Relocate in Louisiana ..................................................... 16
6.1.3    Option 3: Sell ....................................................................................................... 16
6.2      If applicant leases land ........................................................................................ 16
6.3      If applicant is a condominium owner ................................................................... 16
6.3.1    Prior to and on March 3, 2008 ............................................................................. 16
6.3.2    After March 3, 2008 ............................................................................................. 16
6.4      If applicant sold home prior to August 29, 2007, ................................................ 17

7        Forms of Funding Assistance .................................................................. 17

8        Eligibility Requirements for the Elevation Incentive ...................... 17

9        Eligibility Requirements for Additional Compensation Grant .... 18

10       Inputs Necessary for Calculation of Awards .................................... 19
10.1     Pre-storm Value .................................................................................................... 19
10.2     Estimated Cost of Damage .................................................................................. 19
10.3     Estimated elevation cost for damaged residence ............................................... 20
10.4     Other compensation ............................................................................................ 20
10.5     Proceeds from sale of home, ............................................................................... 21
10.6     Legal Fees ........................................................................................................... 22
10.7     FEMA NFIP Increased Cost of Compliance Funding ......................................... 22

11       Single Unit Structures and Town Homes ........................................... 23
11.1     Inputs ................................................................................................................... 23
11.2     Calculation .......................................................................................................... 27
11.2.1   Options ................................................................................................................ 27
11.2.2   Compensation Grant Calculation ........................................................................ 27
11.2.3   Elevation Incentive for Site Built Homes ............................................................ 28
11.2.4   Additional Compensation Grant: ......................................................................... 29

12       Double Unit Structures ............................................................................. 30
12.1     Inputs ................................................................................................................... 30
12.2     Calculation .......................................................................................................... 33
12.2.1   Options ................................................................................................................ 33
12.2.2   Compensation Grant Calculation ........................................................................ 33
12.2.3   Elevation Incentive Calculation ........................................................................... 33
12.2.4   Additional Compensation Grant Calculation ....................................................... 33

13       Site-Built Homes on Leased Land ......................................................... 34
13.1     Inputs ................................................................................................................... 34
13.2     Calculation .......................................................................................................... 34
13.2.1   Options ................................................................................................................ 34
13.2.2   Compensation Grant Calculation ........................................................................ 34
13.2.3   Additional Compensation Grant Calculation ....................................................... 34

14       Manufactured Housing (Mobile Homes) on Owned Land ............... 34
14.1     Inputs ................................................................................................................... 34
14.2     Calculation .......................................................................................................... 37
14.2.1   Options ................................................................................................................ 37



Homeowner Program Policies Version 7.0

14.2.2  Compensation Grant Calculation ........................................................................ 37
14.2.3  Elevation Incentive Calculation ........................................................................ 37
14.2.4  Additional Compensation Grant Calculation .................................................... 37
**15      Manufactured housing (mobile homes on leased land)** ................. **38**
15.1    Inputs ................................................................................................................ 38
15.2    Calculation ........................................................................................................ 39
15.2.1  Options .............................................................................................................. 39
15.2.2  Calculation of Benefits ..................................................................................... 40
**16      Condominiums** ........................................................................................ **40**
16.1    Program Requirements ...................................................................................... 40
16.1.1  Special Application Documents for Condominiums .......................................... 40
16.2    Options .............................................................................................................. 40
16.3    Compensation Grant .......................................................................................... 41
16.3.1  Inputs ................................................................................................................ 41
16.3.2  Calculation ........................................................................................................ 43
16.4    Additional Compensation Grant (ACG) ............................................................ 43
**17      Applicants Who Sold Home Prior to August 29, 2007** ................... **44**
17.1    Inputs ................................................................................................................ 44
17.2    Calculation ........................................................................................................ 44
17.2.1  Options .............................................................................................................. 44
17.2.2  Calculation of Benefits ..................................................................................... 44
**18      Assignment** ............................................................................................. **45**
18.1    Eligibility requirements ..................................................................................... 45
18.2    Program requirements ....................................................................................... 45
18.2.1  Application ......................................................................................................... 45
18.2.2  Legal documentation ......................................................................................... 46
18.3    Calculation ........................................................................................................ 46
18.4    Appeals .............................................................................................................. 46
18.5    Revoking an Assignment ................................................................................... 46
**19      Murphy Oil Spill** .................................................................................... **46**
**20      Agriculture Street Superfund Site** ..................................................... **47**
**21      Benefit Selection Process** .................................................................... **47**
21.1    Letters ................................................................................................................ 47
**22      Closing for Option 1: Stay where land is owned** ............................. **47**
22.1    Documents Executed at Closing ....................................................................... 47
22.2    Payment Deductions at Closing ........................................................................ 48
**23      Closing for Option 2: Relocate where land is owned** ..................... **49**
23.1    Replacement Property Program Requirements ................................................. 49
23.2    Replacement Property Documentation .............................................................. 49
23.3    Documents Executed at Closing ....................................................................... 49
23.4    Payment Deductions at Closing ........................................................................ 50



Homeowner Program Policies Version 7.0

23.5    SBA Deed Restriction ......................................................................... 50
23.6    Clearance of Property ........................................................................ 50
23.7    Vacating Property ............................................................................. 51
**24      Closing for Option 3: Sell where land is owned** ..................... 51
24.1    Documents Executed at Closing ......................................................... 51
24.2    Payment Deductions at Closing .......................................................... 51
24.3    SBA Deed Restriction ......................................................................... 51
24.4    Clearance of property ........................................................................ 51
24.5    Vacating Property ............................................................................. 52
**25      Closing for Leased Land Applicants** ...................................... 52
25.1    Documents Executed at Closing ......................................................... 52
25.2    Clearance of Property ........................................................................ 52
**26      Closing – Applicants sold home prior to August 29, 2006** ........... 52
26.1    Documents Executed at Closing ......................................................... 52
**27      Elevation Incentive Agreement** ............................................... 53
**28      Disbursement Schedule** .......................................................... 53
**29      Second Closings and Second Disbursements** ..................... 53
**30      Post Closing** .............................................................................. 53
30.1    Option Selection Change .................................................................... 53
30.1.1  Change from Option 1 to Option 2 or 3 ............................................ 53
30.1.2  Change from Option 2 to Option 3 .................................................... 54
30.1.3  Change from Option 3 to Option 2 .................................................... 54
30.2    Assuming covenant requirements ...................................................... 54
30.3    Grant review and additional disbursements, ..................................... 55
**31      Anti- Fraud and Compliance Policies** .................................... 55
**32      Compliance Period Extensions** .............................................. 55
**33      FEMA's Severe Repetitive Loss Program** ............................. 58

 **Homeowner Policies Version 7.0**

# 1   Eligibility Requirements to Apply for Program

## 1.1   Parish

The damaged home must be located in one of the following 37 parishes: Acadia, Allen, Ascension, Assumption, Calcasieu, Cameron, Beauregard, East Baton Rouge, East Feliciana, Evangeline, Iberia, Iberville, Jefferson, Jefferson Davis, Lafayette, Lafourche, Livingston, Orleans, Pointe Coupee, Plaquemines, Sabine, St. Bernard, St. Charles, St. Helena, St. James, St. John, St. Landry, St. Mary, St. Martin, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Vernon, Washington, West Baton Rouge, and West Feliciana.

## 1.2   Owner Occupancy

- *Definition:* To be eligible to apply for *The Road Home Program,* the applicant(s) must have owned and occupied the property as their primary residence as of and prior to the date of Hurricane Katrina (August 29, 2005) or Rita (September 24, 2005). Owners of site built and manufactured housing who did not own the land on which their residence was situated are eligible for assistance.
- *Verification:* Owner-occupancy is verified by *The Road Home Program* and verification methods vary depending on the option selected by the applicant(s) and the applicant's ownership situation.

### 1.2.1   Ownership

Due to the many different ownership verification policies depending on ownership situation and structure type, there is a separate section explaining ownership verification methodology. See Section 2, Ownership for ownership verification methodology.

### 1.2.2   Occupancy

To confirm occupancy, the program looks for a homestead exemption in the property tax records provided by the Parish from the time of the storm. If the tax records have established ownership and the Parish has granted a homestead exemption, the property is considered occupied by the applicant. In the absence of *The Road Home* confirming a homestead exemption from records provided by the Parish, *The Road Home* uses the following hierarchy to establish occupancy (all occupancy documentation must be from the time of the storm):

1. 2005 tax records demonstrating homestead exemption for the property
2. Copy of electric, gas, water, trash, sewage, cable or landline phone bill. The bill must confirm that service was provided in the preceding applicable storm or the month of the applicable storm and must match name and address on *The Road Home* application
3. Letter from electric, gas, water, trash, sewage, cable or landline phone Company. The letter must confirm that service was provided in the preceding applicable storm or the month of the applicable storm and must match name and address on *The Road Home* application
4. Voter registration records submitted together with driver's license. The address on the voter registration records and the driver's license must match the name and address on *The Road Home* application and must be valid at the time of the storm



# Homeowner Policies Version 7.0

5. Copy of credit card bill sent to damaged residence in month preceding the applicable storm or the month of the applicable storm and matching the name and address on *The Road Home* application

6. Copy of bank statement sent to damaged residence in the preceding month of the applicable storm or the month of the applicable storm and matching the name and address on *The Road Home* application

7. Copy of applicant's insurance policy covering the home or the contents of the home. The policy must confirm insurance coverage at the time of the storm and must match name and address on The Road Home application.

8. Copy of city directory at the time of the storm that lists the applicant residing at the damaged residence address[1]

9. Presence of 3rd party verified insurance information in the data warehouse

10. Driver's license accompanied by additional affidavit stating that applicant was residing at damaged residence at the time of the storm[2]. The address on the driver's license must match the name and address on *The Road Home* application and be valid at the time of the storm

For a period from August 15 – August 31, 2007, if documentation is not available from then allowed sources - homestead exemption or utility records - applicants are permitted to certify to occupancy in *The Road Home* affidavit signed at closing.

For all options, applicants sign an affidavit at closing certifying that the applicant was the owner-occupant at the time of the storm.

## 1.3  Structure Type

- *Definition:* Home must be a single-unit structure, double-unit structure, town home, manufactured housing (mobile home) or condominium.
  - o *Single unit*
  - o *Town home*
  - o *Double unit:*
    - An applicant who owns one side of a double unit is eligible to apply for the Homeowner program.
    - An applicant who rents out one side of a double unit and lives as an owner-occupant on the other side is eligible to apply for assistance through the Homeowner Program.
  - o *Manufactured housing (mobile home):* Manufactured housing home owners are eligible to apply for the Homeowner program regardless of whether or not the manufactured housing applicant owns the land on which the manufactured housing was situated.
  - o *Condominium*
- *Special Circumstances:*
  - o *Boats:* An applicant who lived in a boat is not eligible to apply for the program; and
  - o *RVs:* An applicant who lived in a RV is not eligible to apply for the program.

---

[1] Version 6.1, Revision 20, November 6, 2008
[2] Version 7.0, Revision 43, October 28, 2008

 **Homeowner Policies Version 7.0**

### 1.4    FEMA Registration and Categorization

### 1.4.1   Definition

Home must be registered for FEMA individual assistance and categorized by FEMA as having been "substantially damaged" (equal to major damage) or "destroyed" (equal to severe damage) **OR** home must have sustained sufficient damage, as determined by *Road Home* methodology that emulates the FEMA damage categories.

### 1.4.2   Stick Built Home Methodology

- *Eligibility Methodology for Letters Generated Prior to June 12, 2007:*
  - *Property registered with FEMA and damage was either major or severe based on information in FEMA databases is eligible.*
    - MAJOR
      - If property was coded as a "major damaged unit" by a FEMA inspector (code = "5555"), then damage is "major".
      - If FEMA's observed amount for structural damage was >=$5,200 and <$30,000 and not = $10,500, then damage is "major".
      - If there is no observed damage amount recorded by FEMA, but there was an actual cash disbursement for structural damage, the same rule as above applies.
      - If property was examined by FEMA using geo-spatial data and not inspected but had flood level >= 1 and <2ft, then damage is "major".
    - SEVERE
      - If property was coded as a "residential rebuild" by a FEMA inspector (code = "6391" or "6980" or "6981"), then damage is "severe".
      - If FEMA's observed amount for structural damage was >=$30,000 or observed amount =$10,500, then damage is "severe".
      - If there is no observed damage amount recorded by FEMA, but there was an actual cash disbursement for structural damage, the same rule as above applies.
      - If property was examined by FEMA using geo-spatial and not inspected with flood level >= 2 ft, then damage is "severe".

  - *Property was not registered with FEMA OR FEMA registration exists but The Road Home only has partial or no FEMA data for determination of 'major' or 'severe'*
    - If the *Road Home* evaluation (home evaluation) determined that the home received equal to or greater than $5,200 worth of damage and the damage was caused by the storm, the home meets the FEMA standard.
- *Eligibility Methodology for Letters Generated After June 12, 2007 and Before December 3, 2007.*
  - *Property registered with FEMA and damage was either major or severe based on information in FEMA databases is eligible.*

 **Homeowner Policies Version 7.0**

- o  *Property (1) not register with FEMA OR (2) registered with FEMA but The Road Home only has partial or no FEMA data for determination of 'major' or 'severe OR (3) registered with FEMA and FEMA classified the damage to home as 'minor' but the classification may have been in error.*  The property is eligible if one of the following conditions is met:
    1. The property received <u>only</u> a Type 1 evaluation.  (Properties that receive only Type 1 evaluations are those that have been demolished or are so damaged that they are considered by the evaluator to require reconstruction.)  **OR**
    2. The property, based on *The Road Home's* home evaluation, sustained 601 or more square feet of roof damage. **OR**
    3. The property was located in an area where the flood maps and/or aerial photography and/or Pictometry show that the flood waters were one foot or more <u>AND</u> either:
        - the photos of the property taken by *The Road Home* show that it was not elevated;  **OR**
        - the photos of the property taken by *The Road Home* show the level of water equal to at least one foot on the first floor living level; **OR**
        - *The Road Home* estimate of damage for electrical systems and drywall confirms a need for replacement of all items on the first floor. **OR**
    4. Flood insurance documentation provided by the applicant demonstrates that the home meets one or more of the FEMA surrogates listed above (#1, 2, or 3) even when the Home Evaluation data does not. [3]

- •  *Eligibility Methodology for Letters Generated after December 3, 2007*
    - o  *Property registered with FEMA and damage was either major or severe based on information in FEMA databases is eligible.*
    - o  *Property (1) not registered with FEMA OR (2) registered with FEMA but The Road Home only has partial or no FEMA data for determination of 'major' or 'severe OR (3) registered with FEMA and FEMA classified the damage to home as 'minor' but the classification may have been in error.* The property is eligible if one of the following conditions are met:
        1. The property received <u>only</u> a Type 1 evaluation.  (Properties that receive only Type 1 evaluations are those that have been demolished or are so damaged that they are considered by the evaluator to require reconstruction.)  **OR**
        2. The property, based on *The Road Home's* home evaluation, sustained 601 or more square feet of roof damage the property. **OR**
        3. The photos of the property taken by *The Road Home* show the level of water equal to at least one foot on the first floor living level the property.  **OR**
        4. *The Road Home* estimate of damage for electrical systems and/or drywall confirms a need for replacement of all items on the first floor the property **OR**

---

[3] Version 6.0, Revision 3, July 9, 2008



# Homeowner Policies Version 7.0

5. Flood insurance documentation provided by the applicant demonstrates that the home meets one or more of the FEMA surrogates listed above (#1, 2, 3 or 4) even when the Home Evaluation data does not[4].

## 1.4.3  Manufactured Home Methodology[5]

The following FEMA eligibility policies apply to manufactured homes:

- *Definition:* Home must be registered for FEMA individual assistance and categorized by FEMA as having been "destroyed" or having suffered "substantial damage" or home must have sustained an appropriate threshold of damage (methodology for determining threshold described below in "Verification" section).

- *Verification Methodology:* FEMA registration and categorization as "destroyed" or "substantially damaged" will be verified by *The Road Home* program using the following protocol which is called either "major" or "severe" under *The Road Home*:
  - **MAJOR**
    - If it was coded as a "major damaged unit" by a FEMA inspector (code = "5555"), then damage is "major"
    - If observed amount for structural damage was >=$5,200 and <$30,000 and not = $10,500, then damage is "major"
    - If there is no observed amount recorded by FEMA, but there was an actual cash disbursement for structural damage, the same rules as above applies.
    - If properties are geo-spatial and not inspected with flood level >= 1 and <2ft, then damage is "major"
  - **SEVERE**
    - If property was coded as a "residential rebuild" by a FEMA inspector (code = "6391" or "6980" or "6981"), then damage is "severe".
    - If observed amount for structural damage was >=$30,000 or observed amount =$10,500, then damage is "severe"
    - If there is no observed amount recorded by FEMA, but there was an actual cash disbursement for structural damage, the same rules as above applies.
    - If properties are geo-spatial, not inspected with flood level >= 2 ft, then damage is "severe"

- *Verification Methodology* for applicants who (1) did not register with FEMA, (2) registered with FEMA but *The Road Home* only has partial or no FEMA data for determination of 'major' or 'severe', or (3) registered with FEMA and FEMA classified the damage to their home as 'minor' but the classification may have been in error are considered FEMA eligible if one of the following conditions are met:
  - The property received <u>only</u> a Type 1 evaluation.  (Properties that receive only Type 1 evaluations are those that have been demolished or are so damaged that they are considered by the evaluator to require reconstruction.)  **OR**
  - The property sustained damages equal to or exceeding $5,200 based on the Home Evaluation Type 2 evaluation.

---

[4] Version 6.0, Revision 3, July 9, 2008
[5] Version 6.0, Revision 2, July 9, 2008



# Homeowner Policies Version 7.0

### 1.4.4   Condominium Methodology

The following FEMA eligibility policies apply to condominiums:

- *Definition:* Home must be registered for FEMA individual assistance and categorized by FEMA as having been "destroyed" or having suffered "substantial damage" or home must have sustained an appropriate threshold of damage (methodology for determining threshold described below in "Verification" section).

- *Verification Methodology:* FEMA registration and categorization as "destroyed" or "substantially damaged" will be verified by *The Road Home* program using the following protocol which is called either "major" or "severe" under *The Road Home*:

  - **MAJOR**
    - If it was coded as a "major damaged unit" by a FEMA inspector (code = "5555"), then damage is "major"
    - If observed amount for structural damage was >=$5,200 and <$30,000 and not = $10,500, then damage is "major"
    - If there is no observed amount recorded by FEMA, but there was an actual cash disbursement for structural damage, the same rules as above applies.
    - If properties are geo-spatial and not inspected with flood level >= 1 and <2ft, then damage is "major"

  - **SEVERE**
    - If property was coded as a "residential rebuild" by a FEMA inspector (code = "6391" or "6980" or "6981"), then damage is "severe".
    - If observed amount for structural damage was >=$30,000 or observed amount =$10,500, then damage is "severe"
    - If there is no observed amount recorded by FEMA, but there was an actual cash disbursement for structural damage, the same rules as above applies.
    - If properties are geo-spatial, not inspected with flood level >= 2 ft, then damage is "severe"

- *Verification Methodology* for applicants who (1) did not register with FEMA, (2) registered with FEMA but *The Road Home* only has partial or no FEMA data for determination of 'major' or 'severe', or (3) registered with FEMA and FEMA classified the damage to their home as 'minor' but the classification may have been in error are considered FEMA eligible if one of the following conditions are met:

  1. If the property received <u>only</u> a Type 1 evaluation the property is considered eligible.  (Properties that receive only Type 1 evaluations are those that have been demolished or are so damaged that they are considered by the evaluator to require reconstruction.)  **OR**
  2. If the photos of the property taken by *The Road Home* show the level of water equal to at least one foot on the first floor living level
  3. If drywall that requires replacement on the first floor (Specification 5305) as compared to the elevation footprint (Specification 10001) is equal to or greater than 1:1 then the property is eligible **OR**



# Homeowner Policies Version 7.0

4. Flood insurance documentation provided by the applicant demonstrates that the home meets one or more of the FEMA surrogates listed above (#1, 2, or 3) even when the Home Evaluation data does not[6].

## 2    Ownership

### 2.1    Option 1 Ownership for Applicants on Owned Land

Ownership is verified by comparing property and applicant information with the names and addresses on the property tax records from the time of the storms and from the most recent tax year.  If matches are found, the match establishes ownership at the time of the storm and currently. If unable to obtain a match between the names on the application and the names on the property tax records, *The Road Home* completes an abbreviated title search (ownership search) to determine ownership. (For more information on ownership requirements see Section 2. Ownership).  If there is more than one applicant listed on the application file, only one applicant needs to be matched.  There is no title insurance policy issued.

### 2.2    Option 2 and 3 Ownership for Applicants on Owned Land

A full title search is ordered by *The Road Home* for Option 2 and 3 applicants of single units, town homes, double units and manufactured housing where land is owned.  The title company which completes the full title search issues a title insurance policy to the State of Louisiana and determines the title and ownership documentation that must be on file for each applicant.

### 2.3    Special Circumstances Related to Type of Ownership

#### 2.3.1   LLC

LLC ownership at the time of the storm is not an eligible form of ownership.

#### 2.3.2   Reverse Mortgage

Applicants with a reverse mortgage at the time of the storm are eligible.

#### 2.3.3   Owned land with other individuals

Applicants who owned and occupied a structure at the time of the storm that is located on land that they owned along with other individuals (for example, it may be owned together with their family) must be treated as an applicant on owned land.

#### 2.3.4   Purchase Contracts

- Contract for deed: Not eligible unless applicant converts their contract to full ownership prior to receiving funding assistance from program.
- Rent to own: Not eligible unless applicant converts their contract to full *ownership prior to receiving funding assistance from program.*
- Bond for deed: Not eligible unless applicant converts their contract to full ownership prior to receiving funding assistance from program.

---

[6] Version 6.0, Revision 3, July 9, 2008



# Homeowner Policies Version 7.0

- Lease to own: Not eligible unless applicant converts their contract to full ownership prior to receiving funding assistance from program.
- Evidence of purchase contracts: Proof that an applicant was purchasing a home on a contract as identified above may be evidenced by:
  - o The applicants presenting the notarized Contract dated and executed prior to the storm (August 29, 2005 or September 24, 2005)  for review by OCD legal staff; **OR**
  - o The program finding a notarized and executed Contract that was filed prior to the storm (August 29, 2005 or September 24, 2005) in the conveyance records of the Parish.
- Proof that a Contract has been completed and title conveyed to the purchaser is provided by:
  - o Presentation to the Road Home of a notarized, executed conveyance document from the seller to the contract purchaser; **OR**
  - o Evidence of recordation of the title in the name of the applicant in the conveyance records of the parish.

## 2.3.5  Usufruct

*Usufruct:* Case by case basis to be determined by the program.  Usufruct cases should be encouraged to apply for the program.

## 2.3.6  Act of Donation

- Definition:  An Act of Donation is a form of property transfer without exchange or payment. For the purpose of the *Road Home* an Act of Donation must be:
  - o In writing
  - o Witnessed by two people
  - o Notarized and
  - o Recorded in the public record
- Acts of Donation made post storm due to <u>death</u> of owner occupant at time of storm:
  - o If *Road Home* grant is expressly donated in the Act of Donation, no additional title work is required to prove ownership.
  - o If *Road Home* grant is not expressly donated in the Act of Donation, abbreviated title work establishes if there are other heirs who may be eligible to share Road Home benefits.
- Acts of Donation made prior to the storm:
  - o Ownership and occupancy are established in same manner as other properties
- Acts of Donation made after the storm and owner at time of storm is <u>not</u> deceased;
  - o Treated the same as if the property was sold and ownership was transferred with an exchange of payment;
  - o The owner at the time of the storm who transferred property through an Act of Donation may assign his or her Road Home grant to the new owner (see Section 18)

 **Homeowner Policies Version 7.0**

- o  If the owner at time of storm donates property and does not also assign rights, the owner at time of storm is not eligible for Road Home assistance unless funds are available at the end of the program.

### 2.3.7  Trust

Property held in trust for the benefit of natural persons can be eligible for a *Road Home* grant as long as at least one of the occupants at the time of the storm was a current beneficiary of the Trust. The trustee's powers must include the ability to affect the damaged property.  If the trustee's powers do not include the ability to affect the damaged property, the beneficiaries with an interest in the damaged property must sign the closing documents along with the Trustee.

The following is required to confirm eligibility:

- The applicant must provide a copy of the trust document
- The trust document or an abstract or extract of the trust must be recorded in the conveyance records of the parish in which the damaged property is located.  This recordation in the conveyance records of the parish in which the damaged property is located may be recorded post-storm if necessary.

The applicable grant agreement and/or covenants must be executed by trustee(s) unless the trust distributes the property to a beneficiary, in which event the beneficiary receiving the property must execute the applicable grant agreement and/or covenants.  In the event that the property in trust is also subject to a usufruct (including to the Trustee or Settlor), the rules regarding *Road Home* grants to usufructuary apply.  If the property was not serving as the primary residence for the current beneficiaries or trustee, the applicant(s) is not eligible for assistance.

### 2.4  *Special Circumstances Related to Ownership Identity*

### 2.4.1  Death of eligible owner occupant

Some eligible owner-occupants at the time of the storm died during the storm or have died since the storm.  If the applicant(s) died during the storm or has died since the time of the storms, the person or person(s) placed in legal possession of the property are eligible for assistance from *The Road Home* program in place of the eligible owner-occupant who has since died.

In cases where husband and wife acquired ownership of property as community property prior to the storm and one of the spouses dies prior to, during or after storm and the intestate or testate estate by Judgment of Possession provides surviving spouse a usufruct over the children's interest, the surviving eligible owner occupant of the deceased maintaining full ownership of half interest in property with usufruct over the other half interest, is the only individual required to attend closing and execute closing documents.  The children maintaining naked interest of other half interest in property are not required to attend closing or execute closing documents.

In all other cases where the eligible owner occupant died during or has died since the time of the storm, the following documentation, depending on the situation, is required prior to closing to confirm ownership:



# Homeowner Policies Version 7.0

| Was there a will? | Special Circumstances | Documents needed |
|---|---|---|
| Yes | Applicant elects Option 1 | Judgment of Possession |
| No | All Options. Minor child (under age 18) inherited the property | Judgment of Possession **AND** Tutor's Judicial Authorization of Transaction |
| No | All Options. Person with limited mental capacity to execute legal documents inherits property | Judgment of Possession and Curator's Judicial Authorization of Transaction (unless a durable power of attorney was executed prior to incapacity). |
| No | All Options. Substantial debt other than mortgage on the property | Judgment of Possession |
| No | Applicant elects Option 1.  Adult competent heirs inherited the property. | Affidavit of Death, Domicile and Heir ship |

If an eligible owner occupant dies and leaves their damaged property to an LLC, the application is ineligible for assistance.

## 2.4.2  2 Applications from 1 Person Due to Death of Owner-Occupant

In cases where there are two applications from one person because the applicant was both (1) an owner-occupant at the time of the storm AND (2) placed in legal possession of another property which was owner-occupied at the time of the storm but the eligible owner-occupant at the time of the storm has since passed away (this includes owner-occupants who died during the storm as well as following the storm), the applicant is eligible for assistance at both properties.  The applicant cannot choose Option 1 for both properties but the applicant can choose any of the following option combinations and will be obligated to sign all applicable closing documentation associated with each option:

1.   Option 1 and 2
2.   Option 1 and 3
3.   Option 1 and Assignment
4.   Option 2 and 2
5.   Option 2 and 3
6.   Option 2 and Assignment
7.   Option 3 and Assignment

If the applicant would like to be considered for an Additional Compensation Grant (ACG) for the property they have inherited then the applicant must provide household income documentation for the household members who will be residing in the damaged residence (if choosing Option 1) or the replacement property (if choosing Option 2).

Exceptional Cases:
- If inherited property is contiguous with the property owned by the heir, the applicant can combine the properties into one homestead and receive full grant award amount for both properties.  If the applicant is planning to remain on the property, the applicant can choose Option 1 for both residences.

 **Homeowner Policies Version 7.0**

- If there is more than one heir inheriting the property and the grant for the inherited property is to be disbursed to an heir who is not receiving a *Road Home* grant for his/her own property, then that heir can choose any option regardless of the option chosen by the other heir(s).

### 2.4.3  Incapacity or infirmity of applicant

If an applicant is incapacitated due to illness or other infirmity, someone with a legal right to bind that person legally, such as is provided by a power of attorney is eligible to apply for assistance on behalf of the applicant.

### 2.5  Special Circumstances Related to Current Ownership

- *Applicant(s) already sold home before August 29, 2007[7]:* Homeowners who sold their home prior to the start of *The Road Home* program (August 29, 2006) are eligible for assistance[8]. (See Section 6.4 and 10.5).
- *Applicant(s) already sold home on or after August 29, 2007:* The program accepted applications from applicants who sold the home that they owned and resided in at the time of the storm on or after August 29, 2007, but at the direction of the State, these applications are not currently being processed[9].
- *Applicants assigned rights to program to new applicant:* If an applicant sold their home prior to receiving assistance from the program and assigned their rights to the *Road Home* program to the new owner, the new owner is eligible for assistance.  (See also Section 18: Assignment).
- *Mobile home homeowners on leased land and owned land who sold mobile home:* Mobile home homeowners on leased land or owned land who sold their mobile home structure are eligible for assistance.
- *Mobile home homeowners on owned land who sold their land:* Mobile home applicants on owned land who sold their land are eligible for assistance as a Sold Home applicant if they sold their home before August 29, 2007.  Mobile home applicants on owned land who sold their land on or after August 29, 2007 are not currently being processed[10] [11].
- *Foreclosure:* Applicants who lost ownership of their homes due to foreclosure are ineligible for assistance.
- *Active military duty:*  Active duty military personnel who own storm-damaged home in Louisiana but are currently assigned to duty away from their home or were assigned to duty away from their home at the time of the storm are eligible to apply.

### 2.6  Transfer of ownership back to eligible owner occupant[12]

There are some applicants who transferred the title to their damaged property to an LLC or to another party by sale or act of donation and want to transfer title back to original pre-storm

---

[7] Version 6.2, Revision 32, April 13, 2009
[8] Version 6.1, Revision 19, November 6, 2008
[9] Version 6.1, Revision 19, November 6, 2008
[10] Version 6.1, Revision 14, July 14, 2008
[11] Version 6.2, Revision 36, April 13, 2009
[12] Version 6.1, Revision 21, November 6, 2008



# Homeowner Policies Version 7.0

ownership so that they can receive *Road Home* benefits.  Applicants who transferred their damaged property to an LLC or to another party by sale or act of donation after the storm and that (1) applied to the RH and had their initial advisory meeting and (2) who meet all RH eligibility criteria can transfer the title back to original pre-storm ownership so that they can receive *Road Home* benefits so long as one of the following conditions is met:

- The applicant(s) transferred property to an LLC that is held in their name; OR
- The applicant(s) transferred property to an LLC  that is held by an immediate family member (mother, father, son, daughter, or spouse); OR
- The applicant(s) transferred property by sale or act of donation to an immediate family member (mother, father, son, daughter, or spouse).

## 2.7   Site built homes on leased land

Applicants with site built homes on leased land must provide the following ownership documentation:

- Document that was recorded in the conveyance records prior to the storm and which states that the applicant owned the site built home.  Examples of such documents include:
  - Lease for land on which site built home is located which includes reference to fact that the applicant owned the site built home (recorded in conveyance records prior to storm);
  - Written transfer of the home as a movable (recorded in conveyance records prior to storm) ;
  - Document from the landowner creating the rights to the home as a movable (recorded in conveyance records prior to storm)
  - Notarized bill of sale which provides ownership to applicant of the site built home (recorded in conveyance records prior to storm)
  - 2005 tax record for the site built home on leased land

OR

- Signed affidavit from the applicant stating they were owner of the site built home at the time of the storm AND two of the following as supporting ownership documentation from the time of the storm:
  - Insurance policy in name of applicant insuring the structure
  - Parish tax assessment for the structure
  - Unrecorded lease agreement for the land.

## 2.8   Manufactured Housing (Mobile Homes) on leased land

Applicants of mobile homes on leased land must provide the following ownership documentation:

- One of the following dated pre-storm:
  - Title from the Department of Motor Vehicles
  - Title found in the land records for the mobile home
  - Notarized bill of sale which provides ownership to applicant of the mobile home
  - 2005 tax record for the mobile home on leased land

OR

 **Homeowner Policies Version 7.0**

- Signed notarized affidavit from the applicant stating they were owner of the mobile home at the time of the storm (this form is called *The Road Home* Mobile Home Ownership Affidavit and is a different form from the MHOOSCA and MHOOCA described below)[13] AND two of the following as supporting ownership documentation from the time of the storm:
  - o Insurance policy in name of the applicant insuring the mobile home structure[14]
  - o Parish tax assessment
  - o Mortgage or other loan document
  - o Bills, checks or receipts for payment of the mobile home structure or bills, checks or receipts issued to the applicant for de-immobilization of the structure
  - o Receipts for demolition/scrapping the mobile home
  - o Notarized ruling from a court indicating that applicant owned mobile home at the time of the storm

### 2.9   Mobile Home on Owned and Leased Land Ownership and Occupancy Forms

*The Road Home Manufactured Home Ownership and Occupancy Self Certification Affidavit (MHOOSCA)*

If a mobile home applicant on leased land or owned land is unable to provide the necessary ownership or occupancy documentation described above, the mobile home applicant may obtain and fill out *The Road Home Manufactured Home Ownership and Occupancy Self Certification Affidavit*. The affidavit states that the applicant owned and occupied the unit at the time of the storm and it was located at the address listed on the application. The affidavit requests information about the make, model, year, VIN number, size (width by height), and condition prior to storm. These fields must be filled in to the best of the applicant's knowledge and ability but are not required to validate the affidavit. The affidavit also includes a statement that the applicant acknowledges that he/she may be prosecuted by Federal, State, and/or local authorities in the event that he/she make or file false, misleading and/or incomplete statements and/or documents[15].

*The Road Home Manufactured Home Ownership and Occupancy Certification (MHOOCA)*

Prior to *The Road Home Manufactured Home Ownership and Occupancy Self Certification Affidavit* being made available, a mobile home applicant could execute *The Road Home* – Mobile Home Ownership and Occupancy Certification from *The Road Home* program and return the executed and notarized document to *The Road Home*. *The Road Home* – Mobile Home Ownership and Occupancy Certification allows a parish or city official to certify that the applicant owned and occupied the mobile home at the time of the storm.

A parish or city official is defined as a person employed or appointed by the unit of local government who has direct knowledge of jurisdictional development patterns and conditions such as the parish or city building official, planning director, tax assessor, constable, or sheriff. Parish officials are not required to possess personal knowledge of occupancy and ownership of the applicant but may rely on records maintained in the regular course of business for the purposes of

---

[13] Version 6.2, Revision 33, April 13, 2009
[14] Version 6.1, Revision 12, November 6, 2008
[15] Version 6.1, Revision 13, November 6, 2008



# Homeowner Policies Version 7.0

execution of the written certification document.  All mobile home applicants who submit the certification must also complete *The Road Home* Mobile Home Ownership Affidavit.

## *2.10 Double Unit (Duplex) Ownership Situations*

The following are the policies regarding various double unit ownership situations:

- *Two sides of duplex are separate tax parcels:*
  - *Situation 1:* Applicant "A" owned and occupied one half of the duplex at time of storm and Applicant B owned and occupied the other half of the duplex at the time of the storm, both Applicant "A" and Applicant "B" can apply separately to *The Road Home.*
  - *Situation 2:* Applicant "A" and Applicant "B" jointly own one half of the duplex and Applicant "A" occupied it at the time of the storm and Applicant "B" owned and occupied the other half of the duplex, both Applicant "A" and Applicant "B" can apply separately to *The Road Home.*
  - *Situation 3:* Applicant "A" owns both sides of the duplex and occupied one side of the duplex as an owner-occupant at the time of the storm.  Applicant "A" can apply to *The Road Home* only for the side that the applicant owned and occupied at the time of the storm.  All funding assistance calculation inputs are based on the one half of the duplex that Applicant "A" owned and occupied at the time of the storm.
- *Two sides of duplex are one tax parcel:*
  - *Situation 1:* Applicant "A" owns both sides of the duplex and occupied one side of the duplex at the time of the storm.  Applicant "A" can apply to *The Road Home* for the entire property – both sides of the duplex.  All funding assistance calculation inputs are based on the entire property and both sides of the duplex.
  - *Situation 2:* The parcel is owned by Applicant "A" and Applicant "B".  Applicant "A" occupied one half of the duplex at the time of the storm and Applicant "B" occupied the other half of the duplex at the time of the storm.  There can be only one application for the parcel and Applicant "A" or Applicant "B" or Applicant "A" and "B" together apply once for the parcel (both sides).  All funding assistance calculation inputs are based on the entire parcel and both sides of the duplex.

## *2.11 Title Clearance*

*The Road Home* accepts applications from applicants who may not have clear title. Prior to closing title issues must be cleared up.  Applicants are advised to take steps to clear title issues in order to expedite processing of their applications so that *The Road Home* title review does not turn up a negative finding.  The applicant, not *The Road Home,* is responsible for clearing up title issues prior to closing.

## 3   Eligibility Requirements to Receive Assistance

- All applicant(s) must agree to the following to receive assistance
  - Sign a release so that information given by the applicant(s) can be verified by the Program.
    - Both the applicant and the co-applicant are required to sign the release (unless one of the eligible owner-occupants has provided



# Homeowner Policies Version 7.0

POA to the other to represent them then eligible owner-occupant does not need to sign release).
   o Independently from FEMA, agree to verification of their ownership status and the amount of disaster-related damage to the home.
   o Swear to the accuracy and completeness of all information provided to the Program under penalty of law.
- All applicants must agree to sign a number of documents at closing to receive assistance. These documents are fully explained in later sections and in the legal documents executed at closing.
- *Power of attorney:* Applicant(s) may grant power of attorney to someone who can apply on their behalf.

## 4   Deadlines Established for the *Road Home*

### 4.1   Deadlines
- Application Deadline: *July 31, 2007*
- Deadline for First Advisory Meeting:  *December 15, 2007*
- Deadline for submission of Benefit Election Letter: *November 1, 2008*[16]
- Deadline for submission of Elevation Incentive Form: December 5, 2008[17]
   o OCD will review and approve requests from applicants to be considered for an Elevation Incentive after the deadline on a case-by-case basis.

### 4.2   Special Circumstances related to deadlines and editing applications
- As long as one of the names on the application is an eligible owner-occupant or heir to an eligible owner-occupant, the application can be edited to include additional applicants.
- If no one on the application is an eligible owner-occupant or heir to an eligible owner-occupant, the application cannot be edited and the application is ineligible.
- If the buyer of a damaged property is on the application and has been assigned rights to a *Road Home* grant, but the eligible owner-occupant at the time of the storm (the seller) is not listed on the application, the application cannot be edited to add the eligible owner occupant (the seller).

## 5   Withdrawn Applications
Applicants who submitted an application, completed an initial advisory meeting and then withdrew their application can contact *The Road Home* to have their application reactivated and processed.

## 6   Applicant's Assistance Options

### 6.1   If applicant owns the land and continues to own it at time of closing
Applicants on land that is owned may select compensation to:

---

[16] Version 6.1, Revision 23, November 6, 2008
[17] Version 7.0, Revision 39, December 14, 2009



# Homeowner Policies Version 7.0

### 6.1.1   Option 1: Stay

Applicant elects to receive compensation and agrees to sign a grant agreement, covenant agreement, and other necessary documents at closing.  If applicant decides to use compensation to rebuild, they are free to decide what kind of home to construction (e.g. stick built or manufactured housing).

### 6.1.2   Option 2: Buyout and Relocate in Louisiana

Applicant chooses to sell their home to the State and becomes an owner-occupant in another home in the State of Louisiana and agrees to sign a grant agreement and other necessary documents at closing.  Applicants who sell their property to the program waive all surface rights to the property.  Applicants do not retain any mineral rights unless they specifically request to reserve mineral rights prior to or the day of closing.  Applicants who specifically request to reserve mineral rights prior to or on the day of closing reserve the mineral rights in perpetuity but the Louisiana Land Trust and any subsequent buyers retain all rights to the reasonable use and transfer of the property.

### 6.1.3   Option 3: Sell

Applicant chooses to sell home and move out of the State of Louisiana or elects to sell home and does not purchase a new house (i.e. applicant becomes a renter) and agrees to sign necessary documents at closing. Applicants who sell their property to the program waive all surface rights to the property.  Applicants do not retain any mineral rights unless they specifically request to reserve mineral rights prior to or the day of closing.  Applicants who specifically request to reserve mineral rights prior to or the day of closing reserve the mineral rights in perpetuity but the Louisiana Land Trust and any subsequent buyers retain all rights to the reasonable use and transfer of the property.

## 6.2   If applicant leases land

Owners of homes that are on leased land are eligible for Option 1 compensation grant and additional compensation grant amount but are not obligated to sign a covenant or to own or occupy a replacement property in the State of Louisiana. For applicants in a leased land situation, there is no cash sale transferring ownership of the home from the applicant to the Louisiana Land Trust and there are no program requirements with respect to owning and occupying replacement property in the State of Louisiana.  Applicants are obligated to comply with local and state laws to remove the structure from the property.

## 6.3   If applicant is a condominium owner

### 6.3.1   Prior to and on March 3, 2008

- Condominium owners are eligible for all options.

### 6.3.2   After March 3, 2008

- Owners of condominium units are eligible only for Option 1 compensation grant and additional compensation grant.



# Homeowner Policies Version 7.0

- Condominium owners sign a covenant agreement which requires repayment of any further insurance proceeds and if there is new construction on the site in the future, the condominium must meet building codes.
- The covenant agreement does not impose any occupancy requirements on the applicant.

### 6.4   If applicant sold home prior to August 29, 2007[18], [19]

Applicants who sold their home prior to August 29, 2007 may select one of the following two choices:

- *Choice #1: Own and Occupy Another Home in Louisiana:* Applicant must agree to be the owner of a home in Louisiana and keep it as their primary residence at some point within 3 years of their *Road Home* closing.  Upon becoming an owner-occupant, applicant must remain the owner-occupant until 3 years after *Road Home* closing.
- *Choice #2: Choose not to be an Owner-Occupant in Louisiana:* There are no obligations following closing if applicant selects Choice #2.
- See Section 17 for further information

## 7    Forms of Funding Assistance

Applicants may be eligible for up to three forms of funding assistance depending on the option selected:

- Compensation Grant.
- Elevation Incentive (available only to Option 1 applicants on land that is owned).
  - The Elevation Incentive = $30,000 for site built homes.
  - The Elevation Incentive = $20,000 for mobile homes.
  - An applicant has the option to accept and receive elevation funding from *The Road Home* program even if the applicant chooses to decline the compensation and/or ACG portion of their grant.  The applicant must sign and abide by the requirements of the Elevation Incentive Agreement[20].
- Additional Compensation Grant (available only to Option 1, Option 2 and leased land applicants).
  - The Additional Compensation Grant cap of $50,000 is removed for Option1 applicants.[21]
  - The ACG = $50,000 for Option 2 (See Section 11.2.4)

An applicant's total funding assistance amount cannot exceed $150,000 per damaged residence address[22].

## 8    Eligibility Requirements for the Elevation Incentive

Applicants are eligible for a *Road Home* Elevation Incentive if **ALL** of the following are true:

---

[18] Version 6.1, Revision 19, November 6, 2008
[19] Version 6.2, Revision 32, April 13, 2009
[20] Version 6.2, Revision 27, April 13, 2009
[21] Version 7.0, Revision 41, December 16, 2009
[22] Version 6.2, Revision 31, April 13, 2009



# Homeowner Policies Version 7.0

- Applicant is eligible for *Road Home* Program benefits (though may not have received any benefit or previously declined the benefit)
- Applicant still owns the home that was eligible for *Road Home* benefits
- Home is located in a floodplain based on the Advisory Base Flood Elevation or Base Flood Elevation maps
- Applicant has not already received the maximum $150,000 *Road Home* assistance
- Applicant Elected Option 1 – Keep your home, INCLUDING applicants that were originally processed as an applicant on leased land and subsequently gained ownership of the property on which their damaged residence is or was situated[23]
- Applicant settled all disputes or appeals pending with the *Road Home* so that an Elevation Incentive can be accurately calculated
- Applicant owns a single family home or mobile home. Town homes and duplexes sharing a common roof and /or foundation are eligible if all owners of the structure enter into a legally binding agreement obligating each owner to elevate[24]
- Purchasers of home who received *Road Home* benefits assigned to them by owner at the time of the storm[25]
- Home damaged by the storm must have been lower than the elevation required by the Elevation Incentive Agreement
- Applicant submitted expression of interest in receiving Elevation Incentive postmarked on or prior to December 5, 2008[26]

Applicants ineligible for receiving an Elevation Incentive:
- Owners of condominium units
- Owners of homes not in the Advisory Base Flood Elevation or Base Flood Elevation area
- Owners of duplexes and town homes that share common roof and/or foundation where owners of adjacent homes do not enter into a legally binding agreement to elevate[27]
- Owners of mobile homes and site built homes on leased land[28]
- Owners of homes located in the Agriculture Street Superfund site[29]
- Former owners of homes purchased by the state under Option 2 or 3.

## 9   Eligibility Requirements for the Additional Compensation Grant

- *Determination:* To be eligible for Additional Compensation Grant, applicant's household income must be less than or equal to 80% Area Median Income (AMI) adjusted for household size.  The income calculation includes the annual income of all adult household members including earnings and in-kind sources like social security and pensions and, if total household assets are equal to or greater than $500,000, an imputed income from assets equal to 2% of the cash value of household assets, exclusive of value of primary home.  Only applicants whose total household assets are equal to or greater than

---

[23] Version 6.2, Revision 26, April 13, 2009
[24] Version 6.0 Revision 10, July 9, 2008
[25] Version 6.0, Revision 9, July 9, 2008
[26] Version 6.2, Revision 35, April 13, 2009
[27] Version 6.0, Revision 10, July 9, 2008
[28] Version 6.0, Revision 7, July 9, 2008
[29] Version 6.0, Revision 8, July 9, 2008

 **Homeowner Policies Version 7.0**

$500,000 must provide information regarding the cash value of their household assets. Applicants who choose Option 1: Stay or Option 2: Relocate and meet the income requirements are eligible for the Additional Compensation Grant.

- *Verification:* Applicant self-certifies household income and provides some evidence, such as a pay stub, of income level which does not require independent verification.  The program will use HUD's published income limits for each parish to determine eligibility. The program will not request a credit report from credit agencies for applicants who are eligible for Additional Compensation Grant.

- Refer to the latest approved *Income Policies and Procedures* for more details regarding the eligibility requirements and verification process for the Additional Compensation Grant.

## 10   Inputs Necessary for Calculation of Awards

### 10.1 Pre-storm Value

The pre-storm value includes the value of the property (except in the case of manufactured housing on leased land or a site-built home on leased land) and the structure prior to the storm.

### 10.2 Estimated Cost of Damage

The estimated cost of damage provides an estimate of the basic costs to compensate applicants for damages and help applicants return to a livable home.  It is calculated using the classifications defined in the 2006 National Gulf Coast Reconstruction Cost Book and incorporates costs necessary to ensure that the property meets the State's Uniform Construction Code – the International Residential Building Code.  It does not provide an evaluation that takes into account an exact replacement of applicant's original home.  In contrast to insurance estimates that may be based on replacement costs, the evaluation is based on basic livability standards developed for the program and on costs developed by the construction industry for Louisiana for those items.  For example, while an insurance company may pay for the replacement of crystal chandeliers and granite countertops, The *Road Home* will compensate applicants for standard light fixtures and plastic laminate countertops.  If an applicant has already begun or completed repairs, the estimated cost of damage will include the cost for the repairs based on the same basic livability standards for repairs that have not yet been completed.

The estimated cost of damage does not include a cost estimate for the following:

- Elevation costs (see Section 10.3)
- Detached structures such as sheds and garages, swimming pools, decks and docks, or boat ramps;
- *Special* features, trims and designer features that exceed basic livability requirements and features of standard grade homes such as solar panels, sky lights, wainscoting and wood paneling, Jacuzzis, copper gutters and roofs
- Most free standing appliances and security systems.

A complete and detailed explanation of the repair and replacement allowances used by *The Road Home* program are included in the *Protocols for Estimating Replacement Housing Costs.*

 **Homeowner Policies Version 7.0**

### 10.3 Estimated elevation cost for damaged residence

Estimated elevation costs are those costs associated with elevating the damaged residence. The estimated elevation costs are based on the average costs to elevate homes depending on level of damage, type of construction and square footage of home.

The estimated elevation cost is determined during a home evaluation conducted by *The Road Home*. Home evaluators will provide an estimated elevation cost for all homes located in the flood plain based on the advisory base flood elevation map.

### 10.4 Other compensation

The following are sources of funding assistance provided for structural damage and loss that are considered a duplication of benefits and under federal law must be deducted from the grant assistance amount:

- *FEMA Individual Assistance (FEMA IA)*
  - *Verification:* FEMA IA will be determined and verified by *The Road Home* program through the FEMA NEMIS database. If *The Road Home* is unable to verify the FEMA IA amount through the FEMA NEMIS database, *The Road Home* will use the payment amount provided by the applicant at the time of application. If an applicant is able to provide documentation demonstrating that the FEMA IA amount provided by the FEMA NEMIS database includes amounts not paid to cover structural loss, *The Road Home* will use the documentation provided by the applicant to adjust the FEMA IA payout amount. The documentation provided by the applicant must come from FEMA.
- *FEMA National Flood Insurance Program (NFIP) Insurance*
  - *Definition:* Any payments for loss to the *dwellings* under NFIP insurance policies are deducted from the compensation grant the applicant is eligible to receive. Payments for contents or other expenses are not deducted from the applicant's funding assistance award.
  - *Verification:* The payment to applicants under NFIP policies will be determined and verified by *The Road Home* program through the FEMA NEMIS database. If *The Road Home* is unable to verify the NFIP insurance proceeds through the NFIP database, *The Road Home* will use the payment amount provided by the applicant at the time of application. If an applicant is able to provide documentation demonstrating that the insurance proceeds amount provided by the insurance company includes items not covered in the home evaluation or not paid to cover structural loss, *The Road Home* will use the documentation provided by the applicant to adjust the FEMA NFIP insurance payout. The documentation provided by the applicant must come from the insurance company which issued the payments.
- *USDA*
- *Private insurance*
  - *Definition:* All private insurance settlement amounts for loss to dwellings are deducted from the applicant's funding assistance award. Private insurance payments for contents or other expenses are not deducted from the applicant's funding assistance award.

 **Homeowner Policies Version 7.0**

o   *Verification:* Insurance proceeds are determined and verified by *The Road Home* program through insurance databases and individual insurance companies.  If *The Road Home* is unable to verify the private insurance proceeds through the insurance company, *The Road Home* will use the payment amount provided by the applicant at the time of application.  If an applicant is able to provide documentation demonstrating that the insurance proceeds amount provided by the insurance company includes items not covered in the home evaluation or not paid to cover structural loss, *The Road Home* will use the documentation provided by the applicant to adjust the private insurance payout.  Mold remediation is not included in the home evaluation and insurance payments to cover mold remediation are not deducted from an applicant's funding assistance award.  The documentation provided by the applicant must come from the insurance company which issued the payments.

The Small Business Administration (SBA) considers *Road Home* assistance to be a duplication of their benefits.  Unlike the Other Compensation described above, SBA loan amounts are not deducted until after the funding assistance calculation is completed and the applicant's closing is scheduled.  SBA, not *The Road Home,* determines the fund amount which is deducted from the applicant's funding award.

If a home received structural damage from both storms and the applicant received insurance proceeds for both storms, the entire insurance settlement amounts will be deducted as Other Compensation.

Tax filings related to losses to the home do not affect funding assistance awards and are not considered duplication of benefits.

### 10.5 Proceeds from sale of home[30], [31]

Proceeds from sale of home are deducted from the applicant's funding assistance award if the applicant sold their home on the market prior to August 29, 2007. For Hurricane Katrina, the home must have been sold between August 30, 2005 and August 28, 2007.  For Hurricane Rita, the home must have been sold between September 25, 2005 and August 28, 2007.  For both hurricanes, the sale must have been recorded with the parish no later than September 29, 2007.

o   *Definition:* Proceeds from sale of home are defined as adjusted sales price as evidenced in the HUD 1 Settlement Statement and calculated as follows: (Line 401) minus (Line 502).  If the applicant does not provide a HUD 1 Settlement Statement, the proceeds from sale of home are the gross sales price listed on the IRS 1099.

o   *Verification:* Applicants who sold their home prior to August 29, 2007 are required to submit a copy of the sales agreement listing the sales price of the home and the date of the sale.  Applicants are encouraged to submit a HUD 1 Settlement

---

[30] Version 6.1, Revision 19, November 6, 2008
[31] Version 6.2, Revision 32, April 13, 2009



# Homeowner Policies Version 7.0

Statement in order to determine proceeds from sale of home ((Line 401) minus (Line 502)).  If an applicant does not submit a HUD 1 Settlement Statement, the applicant is contacted and provided the opportunity to submit it.  If the applicant is unable to submit it, then *The Road Home* uses the gross sales price listed on the IRS 1099 form.

## 10.6 Legal Fees

Legal fees that were paid in <u>*successfully*</u> obtaining insurance proceeds will be credited to applicant and will not be deducted as part of their duplication of benefits.  Applicants will need to provide evidence of payment and self-certify in accordance with the *Road Home* policy in order to be credited.

## 10.7 FEMA NFIP Increased Cost of Compliance Funding

FEMA National Flood Insurance Program (NFIP) Increased Cost of Compliance funds used to elevate the damaged residence are deducted from portion of Additional Compensation Grant intended to cover any gap between the estimated elevation cost for the damaged residence and the Elevation Incentive provided.

- *FEMA National Flood Insurance Program (NFIP) - Increased Cost of Compliance (ICC):*
  - o *Definition:* The NFIP offers up to $30,000 to applicants who carried flood insurance and their community determined the damage to their property is 50% or more.
  - o *Source of Information:* The Road Home uses information provided by the National Flood Insurance program to determine if the applicant received or was eligible to receive Increased Cost of Compliance (ICC) funding.
  - o If *The Road Home* is able to determine how much the applicant received from NFIP ICC, then the *Road Home* deducts that amount from the Option 1 additional compensation grant amount the applicant is eligible to receive if they received an elevation incentive[32].
  - o If *The Road Home* is unable to determine how much the applicant received from NFIP ICC but *The Road Home* does determine that the applicant had flood insurance, their community participates in NFIP and their community determined that damage to the property was equal to or greater than 50% then *The Road Home* assumes that the applicant received $30,000.
  - o The applicant can provide evidence to the program that they filed an ICC claim and it was either denied or they received less than $30,000 or it was used for a purpose other than elevation. The applicant may also provide evidence to the program that they used ICC funding for a non-elevation related activity. In these instances, the *Road Home* program will adjust the ICC funding deduction.  This documentation is usually contained in information the applicant received from their flood insurance company.
  - o *Verification:* The award of ICC is determined and verified by *The Road Home* program through a database identifying ICC funding distributed to applicants and ICC eligibility criteria for applicants.

---

[32] Version 6.2, Revision 34, April 13, 2009

 **Homeowner Policies Version 7.0**

## 11   Single Unit Structures and Town Homes

### 11.1 *Inputs*

- *Pre-storm value*
  - *Pre-Storm Value as of and after January 14, 2007*
    The pre-storm value is determined based on the following tiered approach:
    - A pre-storm appraisal provided by the applicant and completed by a Louisiana licensed appraiser on or after January 1, 2000 and up until the date of the storm. The pre-storm appraisal must also reflect the value of the damaged residence on or after January 1, 2000 and up until the date of the storm. A value from a pre-storm appraisal is adjusted to reflect a value as of 2nd quarter 2005 using a price appreciation index published by HUD's Office of Federal Housing Enterprise Oversight (www.ofheo.gov).
    - If no pre-storm appraisal is provided by the applicant, pre-storm value is based on a post-storm appraisal of pre-storm value provided by the applicant and completed by a Louisiana licensed appraiser. The applicant's post-storm appraisal of pre-storm value is validated against The Road Home's estimate of market value provided by an appraiser or a broker's price opinion (BPO) to determine if it is in an acceptable range.[33] *The Road Home* began accepting post-storm appraisals from applicants on December 30, 2006.  As of May 23, 2008, *The Road Home* only accepts one post-storm appraisal from the applicant(s). [34]
    - If no post-storm appraisal of pre-storm value is provided by the applicant, pre-storm value is based on an appraisal from a third party appraisal obtained from a lender or government agency and completed since January 1, 2000.  The third party appraisal is adjusted to reflect a value as of 2nd quarter 2005 using a price appreciation index published by HUD's Office of Federal Housing Enterprise Oversight (www.ofheo.gov).  If there is more than one pre-storm appraisal available for the property, *The Road Home* will use the highest value.
    - If no third party appraisal from a lender or government agency is available, pre-storm value is based on a pre-storm market analysis (2055 appraisal) ordered by *The Road Home* from a Louisiana licensed appraiser.
    - If no pre-storm market analysis is available, pre-storm value is based on a broker's price opinion (BPO) which includes a drive-by of the property and the surrounding neighborhood.
  - *Pre-Storm Value before January 14, 2007*
    For applicants whose letters were generated prior to the implementation of the pre-storm value policies described above, the pre-storm value was determined based on the policies previously in place and described below.

---

[33] Version 6.0, Revision 4, July 9, 2008
[34] Version 6.0, Revision 5, July 9, 2008



# Homeowner Policies Version 7.0

- Applicants may provide an arm's length appraisal (i.e. an appraisal ordered by a lender in conjunction with a loan; not an appraisal ordered by the applicant) that was completed by a Louisiana licensed appraiser on or after January 1, 2000 up until day before the storm that damaged the home.  The pre-storm appraisal must also reflect the value of the damaged residence on or after January 1, 2000 and up until the date of the storm.  A value from a pre-storm appraisal is adjusted to reflect a value as of 2nd quarter 2005 using a price appreciation index published by HUD's Office of Federal Housing Enterprise Oversight (www.ofheo.gov).  Applicants are not allowed to provide appraisals that were completed post-Katrina.  If an arm's length appraisal is provided, the pre-storm value will be based on the appraisal.
- If no arms length appraisal is provided, pre-storm value is based on Automated Valuation Method (AVM).  *The Road Home* stopped ordering AVMs on December 15, 2006 and discontinued their use in benefit election letters as of August 16, 2007
- If no AVM is available, pre-storm value is based on Broker's Price Opinion (BPO).
- If no BPO is available, pre-storm value is based on appraisal obtained by *The Road Home* program.

- *Field Review Appraisal Process for Applicant Submitted Post-Storm Appraisals*
  - Some files include a review appraisal to validate an applicant provided post-storm appraisal of pre-storm value that was considered too high by *The Road Home*.
  - The value returned by the field review appraisal is an acceptable estimate of pre-storm value.
  - *The Road Home* discontinued ordering field review appraisals for applicants who provided post-storm appraisals not considered valid by *The Road Home* on March 4, 2008.

- *Review of Pre-Storm Value[35]*
  Applicants who are not satisfied with *The Road Home's* pre-storm value determination can choose to have their pre-storm value reviewed and possibly revised.  *The Road Home* program follows the steps described below:
  - (1) Reviews the available pre-storm value sources in the file
  - (2) Requests the applicant to submit additional documentation that may help *The Road Home* make a determination of the pre-storm value (as of May 23, 2008, *The Road Home* accepts only one post-storm appraisal from the applicant(s)[36]
  - (3) Orders a market analysis (2055 appraisal) and/or BPO if these pre-storm value sources are not already in the file

---

[35] Version 6.0, Revision 6, July 9, 2008
[36] Version 6.0, Revision 5, July 9, 2008



# Homeowner Policies Version 7.0

- (4) Provides the applicant with the highest available pre-storm value
  - o *Appealing Pre-Storm Value Determination*
    Applicants who are not satisfied with their pre-storm value may submit an Appeal to *The Road Home* Appeals Office.  *The Road Home* Appeals Office:
    - Reviews the available pre-storm value sources in the file
    - Offer the applicant the highest available pre-storm value in the file or opportunity to request a 1004 URAR appraisal.
      - Prior to December 17, 2007:
        - If applicant requests a 1004 appraisal and the 1004 appraisal results in a lower value then the highest pre-storm value available in the file is used to calculate the award.
      - Between December 17, 2007 and March 4, 2008:
        - If the applicant requests a 1004 appraisal prior to closing, the 1004 appraisal is the final pre-storm value, regardless of whether it comes in lower or higher than other pre-storm value sources on file
        - If an applicant requests a 1004 appraisal after closing and the 1004 appraisal results in a lower value than the pre-storm value used in their first closing calculation, the PSV used to calculate the initial award continues to be used.
      - As of March 5, 2008
        - If the applicant requests a 1004 appraisal, the 1004 appraisal is the final pre-storm value, regardless of whether it comes in lower or higher than other pre-storm value sources on file and regardless of whether the applicant has gone to closing.
        - If the applicant has gone to closing and the 1004 value results in a grant calculation that is lower than the grant calculation provided at closing, the applicant must return the difference to the State.
  - o Special circumstances:
    - *Mixed use property: The Road Home* orders an appraisal to determine pre-storm value of the residential portion of a property for applicants living on properties in which a portion is dedicated to commercial use

- Estimated cost of damage
  - o Types of home evaluations:  The estimated cost to repair and the estimated cost to rebuild are determined with a home evaluation conducted by *The Road Home*.  Home evaluators will visit every home involved in the program to determine an estimated cost to repair or rebuild.  There are 2 types of home evaluations:
    - *Evaluation Type 1, used in calculation if damage to home is equal to or greater than 51% damaged*: The evaluation confirms the damage and



# Homeowner Policies Version 7.0

determines the square footage of the total area under roof of the home. Evaluation Type 1 includes $130 per square foot allowance multiplied by the square footage of the total area under roof of the home, a $550 cost allowance to cover a house raising survey, and 2% is added to the total cost to cover builder's risk.  Evaluation Type 1 Estimated Cost of Damage is therefore computed as follows: [(Square footage of total area under roof X $130 per square foot) + $550] x 1.02.

- ▪ Evaluation Type 2, used in calculation if damages to home is less than 51% damaged: Evaluation identifies work to be done in interior rooms and on exterior of home and generates an estimate based on the cost of repairing or replacing various home components, taking into account items such as the type of construction, the number of items to be repaired or replaced, and sizes and dimensions

- o Determination of Evaluation Type: Home evaluators will visit every home involved in the program to determine the estimated cost to repair/rebuild which will allow *The Road Home* program to classify the property as either qualifying for Evaluation Type 1, estimated cost to rebuild or Evaluation Type 2, estimated cost to repair.  The Evaluation Type used to generate an estimated cost to repair/rebuild depends on the percentage damage to the home, which is determined as follows:

The home evaluator will complete both Evaluation Types.  The percentage damage will be determined by the following calculation:

*(Evaluation Type 2 Cost Estimate/Evaluation Type 1 Cost Estimate) x 100 = % Damage*

If *The Road Home* percentage damage is equal to or greater than 51%, then an Evaluation Type 1 Cost – Estimated Cost to Rebuild is assigned to the property.

If *The Road Home* percentage damage is less than 51%, then an Evaluation Type 2 Cost – Estimated Cost to Repair is assigned to the property.

If the home has been cleared or demolished or the home evaluator finds it otherwise impossible to complete an Evaluation Type 2, the home evaluator will make a note that Evaluation Type 2 could not be completed and complete Evaluation Type 1.  For purposes of determining funding assistance calculations, home is considered greater than or equal to 51% damaged.

- o *Special Circumstances*
  - ▪ *Mixed use property:* Home evaluations for applicants living on properties in which a portion is dedicated to commercial use will take into account those portions of the property that the applicant resided in and a pro rata share of the common area items (e.g. roof).



# Homeowner Policies Version 7.0

- Other compensation

  - *FEMA Individual Assistance (FEMA IA)*
  - *FEMA National Flood Insurance Program (NFIP) Insurance*
  - *USDA*
  - *Private Insurance*

- *Legal fees*

## 11.2 Calculation

### 11.2.1 Options

Single unit applicants are eligible for Compensation Grant, Additional Compensation Grant, and Elevation Incentive.  Applicants can choose whatever option best fits their future plans.

### 11.2.2 Compensation Grant Calculation

- Option 1: Stay: Applicants who decide to stay in home:
  - The applicant's *compensation grant amount* is the lesser of their uncompensated damage cost or their uncompensated loss of value up to $150,000
    - Uncompensated cost of damage = *Estimated cost of damage* (minus) any *other compensation* the applicant(s) received for loss to the structure.
    - Uncompensated loss of value = *Pre-storm value* (minus) any *other compensation* the applicant(s) received for loss to the structure.
  - *Insurance penalty deduction:* All applicants were required to carry hazard insurance.  If an applicant was located in the flood plain, the applicant was required to carry flood insurance, except where community opted out.  If the applicant did not carry the appropriate insurance, 30% is deducted from the applicant's compensation grant amount.
- Option 2: Relocate: Applicants who decide to sell to State and Relocate and become an owner-occupant in another home in Louisiana
  - If the home had <u>less than 51% damage</u>, the applicant's *grant amount* is the lesser of their uncompensated cost of damage or their uncompensated loss of value up to $150,000
    - Uncompensated cost of damage = *Estimated cost of damage* (minus) any *other compensation* the applicant(s) received for loss to the structure.
    - Uncompensated loss of value = *Pre-storm value* (minus) any *other compensation* the applicant(s) received for loss to the structure.
  - If the home had <u>equal to or greater than 51% damage</u>, the applicant's *grant* is their uncompensated loss of value up to $150,000
    - Uncompensated loss of value = *Pre-storm value* (minus) any *other compensation* the applicant(s) received for loss to the structure
  - *Insurance penalty deduction:* All applicants were required to carry hazard insurance.  If an applicant was located in the flood plain, the applicant was



# Homeowner Policies Version 7.0

required to carry flood insurance, except where community opted out.  If the applicant did not carry the appropriate insurance, 30% is deducted from the applicant's compensation grant amount.

- **Option 3: Sell: Applicants who decide to sell to State and move out of Louisiana or become a renter**
  - If the home had <u>less than 51%</u> damage, the applicant's *grant amount* is the lesser of their uncompensated cost of damage or 60% of their uncompensated loss of value up to $150,000
    - Uncompensated cost of damage = *Estimated cost of damage* (minus) any *other compensation* the applicant(s) received for loss to the structure
    - Uncompensated loss of value = *Pre-storm value* (minus) any *other compensation* the applicant(s) received for loss to the structure
  - If the home had <u>equal to or greater than 51% damage</u>, the applicant's *grant* is 60% of their uncompensated loss of value up to $150,000
    - 60% of Uncompensated loss of value = 60% *Pre-storm value* (minus) any *other compensation* the applicant(s) received for loss to the structure
  - *Insurance penalty deduction:* All applicants were required to carry hazard insurance.  If an applicant was located in the flood plain, the applicant was required to carry flood insurance, except where community opted out.  If the applicant did not carry the appropriate insurance, 30% is deducted from the applicant's compensation grant amount.
  - *Special exemptions from Sell penalty:*
    - If applicant was 65 years old or older as of December 31, 2005, the applicant is exempt from the 40% penalty applied to the pre-storm value in the Option 3 award calculation,
    - If either the applicant or co-applicant is disabled, then he or she is exempt from the 40% penalty applied to the pre-storm value in the Option 3 award calculation.  The State will consider this penalty exemption request on a case by case basis.  The applicant or co-applicant must contact the State expressing his or her interest in receiving this exemption along with providing appropriate documentation.
    - Applicants in the military or the Coast Guard who have been required to move out of State with Permanent Change of Station (PCS) orders are exempt from the 40% penalty applied to the pre-storm value in the Option 3 award calculation.  The PCS orders must demonstrate that the applicant was transferred out of State and the required date to arrive at the new station was after the date their Louisiana residence was damaged by Hurricanes Katrina and/or Rita.  In parishes affected by Hurricane Rita only, the *required date to arrive at the new station must be after September* 25, 2005.

## 11.2.3 Elevation Incentive for Site Built Homes

- **Applicants eligible to and choosing the option to elevate**
  - The applicant's *Elevation incentive* is the lesser of the following:



# Homeowner Policies Version 7.0

- - *Road Home* available balance = $150,000 (minus) *Compensation grant*
  - Elevation allowance for site built home including modular construction (*$30,000*)[37]
- The award amount is based on the type of structure at the time of the storm and not the type of structure that may be built to replace the damaged structure[38]

*NOTE:* If the structure is a mobile home with a site built addition the elevation allowance used in the calculation above is $20,000.  If the structure is a site built home with a mobile home addition the elevation allowance is $20,000[39].

## 11.2.4  Additional Compensation Grant

- **Applicants who have chosen to stay in home (Option 1) and have not received Elevation Incentive**
  - The applicant's *Additional Compensation Grant* is the lesser of the following:
    - Gap between estimated cost of damage used in Compensation Grant calculation and compensation received = *Estimated cost of damage* (minus) *Other compensation* (minus) *Compensation grant*
    - *The Road Home* Balance = $150,000 (minus) *Compensation grant*
- **Applicants who have chosen to stay in home (Option 1) and have received Elevation Incentive**
  - The applicant's *Additional Compensation Grant* is the lesser of the following:
    - Gap between estimated cost of damage used in Compensation Grant calculation, the Type 1 estimated elevation cost and compensation received = Estimated cost of damage (plus) Estimated elevation cost Type 1 (minus) Other compensation (minus) FEMA NFIP ICC funding for elevation (minus) Compensation Grant (minus) Elevation incentive.
    - *The Road Home* Balance = $150,000 (minus) Compensation grant (minus) Elevation incentive.
    - Additional Compensation Grant Cap of $50,000 is removed for Option 1 applicants to receive the additional ACG provided eligibility requirements are met
  - Note: The Additional Compensation Grant calculation does not include Estimated elevation cost, Other Compensation for elevation, or Elevation incentive in calculation if the Estimated elevation cost (minus) Other Compensation for elevation (minus) Elevation incentive is less than zero.
  - Note: To receive the Additional ACG the following guidelines must be followed:
    - Eligibility will be based upon the income at the time the applicant/co-applicant was determined to be eligible for ACG.
    - Applicants cannot use the removal of the ACG Cap to return the amount of their Elevation Incentive Award in an effort to receive additional ACG as a result of the Returned Funds.

---

[37] Version 6.1, Revision 15, November 6, 2008
[38] Version 6.1, Revision 24, November 6, 2008
[39] Version 6.0, Revision 11, July 9, 2008



# Homeowner Policies Version 7.0

- Applicants who have already filed an appeal cannot re-appeal previous issues or new issues through *The Road Home* or State of Louisiana.

**ACG Award Acceptance & Self Certification:**

- Applicants/Co-Applicants who wish to receive an Additional Compensation Grant (ACG) must self-certify that original grant recipients:
    1. Are still the applicant/co-applicant and still owner of the damage address
    2. Within six (6) months of disbursement of ACG funds that they will provide evidence of their efforts to comply with *The Road Home* Covenants (for example, copies of building permits, utility bills for the damaged address, copies of construction contracts and moving expenses).
    3. Income was true and accurate at the time verified by *The Road home* Program. Heirs do not qualify for re-eligibility of ACG based on their income in the event the original grant recipients have died. Disbursements for the Additional ACG cap removal is made ONLY to the original grant recipients.
    4. Amount of their insurance proceeds is correct and all insurance amounts have been reported to *The Road Home* Program.
    5. They understand and will meet the terms of *The Road Home* Covenants.
    6. Accept the award and acknowledge that they must return any additional funds considered to be a duplication of benefits.

- **Applicants who have chosen to relocate (Option 2)**
    - The applicant's *Additional Compensation Grant* is the lesser of the following:
        - Gap between estimated cost of damage at damaged residence and compensation = *Estimated cost to rebuild (Evaluation Type 1)* (minus) *Other compensation* (minus) *Compensation grant*
        - *The Road Home* Balance = $150,000 (minus) *Compensation grant*
        - Additional Compensation Grant Cap = $50,000

## 12  Double Unit Structures

### 12.1 Inputs

- *Pre-storm value*
    - The determination and verification of the pre-storm value for double-units is the same as the pre-storm value for single-units.

- *Estimated cost of damage - Applicant owns one side of double unit*
    - Each unit is treated as an individual property with its own allowances based on the square footage of the unit and a pro rata share of any common area.  The following three protocols are used to allocate the common area components when evaluating the structure:
        - **Pro-rata Square Footage.**  The total square footage that can be compensated will be measured and calculated for the entire duplex



# Homeowner Policies Version 7.0

excluding utility and garage space.  Each living unit will be measured for its pro-rata share of the square footage that can be compensated. This ratio expressed as a percentage shall be used for prorating all common building components that are equally shared, for example, the roof, insulation, foundation, exterior siding, site improvements, utility services, and exterior porches.

- **By Ownership and Use Agreement.**  Components that can be allocated by use or ownership to a specific unit shall be included in that unit's calculation.  For example, if one half of a duplex per a lease agreement has use of the attached garage, then that unit would receive full calculation of the garage, or if the owner of one-half of a duplex uses the entire interior utility room for storage, it should be included in the primary user's calculation.  The evaluators will interview the owners and allocate per the reported ownership.
- **By Unit.**  Individual building components that are clearly associated with the unit, for example, doors and windows, shall be included in the individual unit's count.

o  *Types of home evaluations:*  The estimated cost to repair and the estimated cost to rebuild are determined with a home evaluation conducted by *The Road Home*. Home evaluators will visit every home involved in the program to determine an estimated cost to repair or rebuild.  There are 2 types of home evaluations:

- *Evaluation Type 1, used in calculation if damage to home is equal to or greater than 51% damaged*: The evaluation confirms the damage and determines the square footage of the total area under roof of the home. Evaluation Type 1 includes $130 per square foot allowance multiplied by the square footage of the total area under roof of the home, a $550 cost allowance to cover a house raising survey, and 2% is added to the total cost to cover builder's risk.  Evaluation Type 1 Estimated Cost of Damage is therefore computed as follows: [(Square footage of total area under roof X $130 per square foot) + $550] x 1.02.
- *Evaluation Type 2, used in calculation if damage to home is less than 51% damaged*: Evaluation identifies work to be done in interior rooms and on exterior of home and generates an estimate based on the cost of repairing or replacing various home components, taking into account items such as the type of construction, the number of items to be repaired or replaced, and sizes and dimensions

o  *Determination of Evaluation Type:* Home evaluators will visit every home involved in the program to determine the estimated cost to repair/rebuild which will allow *The Road Home* program to classify the property as either qualifying for Evaluation Type 1, estimated cost to rebuild or Evaluation Type 2, estimated cost to repair.  The Evaluation Type used to generate an estimated cost to repair/rebuild depends on the percentage damage to the home, which is determined as follows:

The home evaluator will complete both Evaluation Types.  The percentage damage will be determined by the following calculation:



# Homeowner Policies Version 7.0

*(Evaluation Type 2 Cost Estimate/Evaluation Type 1 Cost Estimate) x 100 = %
Damage*

If the *Road Home* percentage damage is <u>equal to or greater</u> than 51%, then an <u>Evaluation Type 1
Cost – Estimated Cost to Rebuild</u> is assigned to the property.

If the *Road Home* percentage damage is <u>less than</u> 51%, then an <u>Evaluation Type 2 Cost –
Estimated Cost to Repair</u> is assigned to the property.

If the home has been <u>cleared or demolished</u> or the home evaluator finds it otherwise impossible to
complete an Evaluation Type 2, the home evaluator will make a note that Evaluation Type 2 could
not be completed and complete Evaluation Type 1.  For purposes of determining funding
assistance calculations, home is considered greater than or equal to 51% damaged.

- *Estimated cost of damage - Applicant owns both sides of a double unit*
  - The estimated cost of damage is based on both sides of the double unit.  The
    owner must coordinate access into the rental unit.
  - *Types of home evaluations:*  The estimated cost to repair and the estimated cost
    to rebuild are determined with a home evaluation conducted by *The Road Home.*
    Home evaluators will visit every home involved in the program to determine an
    estimated cost to repair or rebuild.  There are 2 types of home evaluations:
    - *Evaluation Type 1, used in calculation if damage to home is equal to or
      greater than 51% damaged*: Evaluation based on $130 multiplied by
      square footage of total area under roof of home.  Evaluation confirms the
      damage and generates an estimate of cost to rebuild, based on cost per
      square foot for construction for location and type of construction.  The cost
      per square foot is $130.
    - *Evaluation Type 2, used in calculation if damages to home is less than
      51% damaged*: Evaluation identifies work to be done in interior rooms and
      on exterior of home and generates an estimate based on the cost of
      repairing or replacing various home components, taking into account
      items such as the type of construction, the number of items to be repaired
      or replaced, and sizes and dimensions.  For this type of evaluation, there
      will be a separate checklist which includes up to two of some items as
      applicable to the two units (i.e. home elevation, kitchens, smoke detectors,
      electric service panel, water heaters, water service, and HVAC).
  - *Determination of Evaluation Type:* Home evaluators will visit every home involved
    in the program to determine the estimated cost to repair/rebuild which will allow
    *The Road Home* program to classify the property as either qualifying for
    Evaluation Type 1, estimated cost to rebuild or Evaluation Type 2, estimated cost
    to repair.  The Evaluation Type used to generate an estimated cost to
    repair/rebuild depends on the percentage damage to the home, which is
    determined as follows:



# Homeowner Policies Version 7.0

The home evaluator will complete both Evaluation Types.  The percentage damage will be determined by the following calculation:

*(Evaluation Type 2 Cost Estimate/Evaluation Type 1 Cost Estimate) x 100 = % Damage*

If the *Road Home* percentage damage is <u>equal to or greater</u> than 51%, then an <u>Evaluation Type 1 Cost – Estimated Cost to Rebuild</u> is assigned to the property.

If the *Road Home* percentage damage is <u>less than</u> 51%, then an <u>Evaluation Type 2 Cost – Estimated Cost to Repair</u> is assigned to the property.

If the home has been <u>cleared or demolished</u> or the home evaluator finds it otherwise impossible to complete an Evaluation Type 2, the home evaluator will make a note that Evaluation Type 2 could not be completed and complete Evaluation Type 1.  For purposes of determining funding assistance calculations, home is considered greater than or equal to 51% damaged.

- *Other compensation*
  - o *FEMA Individual Assistance (FEMA IA)*
  - o *FEMA National Flood Insurance Program (NFIP) Insurance*
  - o *USDA*
  - o *Private Insurance*

- *Legal fees*

## 12.2 Calculation

### 12.2.1 Options

Double unit applicants are eligible for Compensation Grant, Additional Compensation Grant, and Elevation Incentive.

Applicants can choose whatever option best fits their future plans, regardless of the ownership structure of the double-unit or the future plans of the other owner (if there are two owners) with the exception of the elevation incentive.  In order for a double unit homeowner to receive an Option 1 Elevation Incentive, both owners must agree to elevate.

### 12.2.2 Compensation Grant Calculation

The compensation grant calculation is the same as the calculation for owners of single unit structures.

### 12.2.3 Elevation Incentive Calculation

The Elevation Incentive calculation is the same as the calculation for owners of single unit structures.

### 12.2.4 Additional Compensation Grant Calculation

The ACG calculation is the same as the calculation for owners of single unit structures.



# Homeowner Policies Version 7.0

## 13  Site-Built Homes on Leased Land

### 13.1 Inputs

- **Pre-storm value:** *Pre-storm value for these types of applicants will be based on an appraisal of the structure only.*

- **Estimated Cost of Damage:** *Same as applicable structure type*

- **Other compensation**
  - *FEMA Individual Assistance (FEMA IA)*
  - *FEMA National Flood Insurance Program (NFIP) Insurance*
- *USDA Private Insurance*

- **Legal fees**

### 13.2 Calculation

#### 13.2.1 Options

Applicants of site-built homes on leased land are eligible for Option 1 compensation grant and additional compensation grant amount.  For applicants in a leased land situation, there is no cash sale transferring ownership of the home from the applicant to the Louisiana Land Trust and there are no program requirements with respect to owning and occupying replacement property in the State of Louisiana.  Applicants are obligated to comply with local and state laws to remove the structure from the property.

*Note:* Applicants who proceed to closing as a site built home on leased land who subsequently obtains full ownership of the property on which their damaged residence is or was located are eligible for the elevation incentive as calculated for site built homes on owned land[40].

#### 13.2.2 Compensation Grant Calculation

The compensation grant calculation depends on the structure type of the site-built home on leased land.  Refer to the applicable section – single unit, town home, duplex, or manufactured housing – for information regarding how the calculation of benefits is computed.

#### 13.2.3 Additional Compensation Grant Calculation

The ACG grant calculation depends on the structure type of the site-built home on leased land.  Refer to the applicable section – single unit, town home, duplex, or manufactured housing – for information regarding how the calculation of benefits is computed.

## 14  Manufactured Housing (Mobile Homes) on Owned Land

### 14.1 Inputs

- **Pre-Storm Value (Manufactured Homes with Land)**

---

[40] Version 6.2, Revision 26, April 13, 2009

 **Homeowner Policies Version 7.0**

o *Determination:*

- A pre-storm appraisal provided by the applicant and completed by a Louisiana licensed appraiser on or after January 1, 2000 and up until date of storm, the pre-storm value is based on the appraisal.  A value from a pre-storm appraisal is adjusted to reflect a value as of 2nd quarter 2005 using a price appreciation index published by HUD's Office of Federal Housing Enterprise Oversight (www.ofheo.gov).  If no pre-storm appraisal was conducted on or after January 1, 2000 and up until the date of the storm, the pre-storm value is based on a Broker's Price Opinion (BPO) or a *Road Home* appraisal of pre-storm value.

- If no pre-storm appraisal is provided by the applicant, pre-storm value is based on a post-storm appraisal of pre-storm value provided by the applicant and completed by a Louisiana licensed appraiser.  The applicant's post-storm appraisal of pre-storm value will be validated against *The Road Home's* estimate of market value provided by an appraiser or a broker's price opinion (BPO) to determine if it is in an acceptable range.  If the value of the applicant ordered appraisal is not within an acceptable range, *The Road Home* will not use the applicant provided post-storm appraisal.

- If no post-storm appraisal of pre-storm value is provided by the applicant or the post-storm appraisal is not valid, pre-storm value is based on an appraisal from a third party appraisal obtained from a lender or government agency and completed since January 1, 2000.  The third party appraisal is adjusted to reflect a value as of 2nd quarter 2005 using a price appreciation index published by HUD's Office of Federal Housing Enterprise Oversight (www.ofheo.gov).  If there is more than one pre-storm appraisal available for the property, *The Road Home* will use the highest value.

- If no third party appraisal from a lender or government agency is available, pre-storm value is based on a pre-storm market analysis (2055 appraisal) ordered by *The Road Home* from a Louisiana licensed appraiser.  There are two ways of completing a market analysis (2055 appraisal) for mobile homes;
  - (1) based on comparables where the mobile home in the comparables is of similar size, age and make or
  - (2) using the National Automobile Dealers Association (NADA) value of the mobile home plus the value of the land

- If the market analysis is done using mobile home comparables, all mobile home comparables used in the appraisal must be mobile home structure types.  If the mobile home was built prior to 1977 then all comparables


must also be pre-1977.  If the mobile home was built after 1977 then all comparables must also be post-1977.

- If the market analysis is done using NADA plus the value of the land, the appraiser can determine the value of the land based on comparables for similar parcels of land in the area and add it to the NADA value for the make, model and year of the mobile home to determine the pre-storm value.  If there is no way of determining the age of the home, the 1977 NADA value for the make and model is used.

- If no pre-storm market analysis is available, pre-storm value is based on a broker's price opinion (BPO) which includes a drive-by of the property and the surrounding neighborhood.  There are two ways of completing a BPO for mobile homes;
    - (1) based on mobile home comparables and the land or;
    - (2) using the NADA value of the mobile home plus the value of the land;

- If the BPO is done using mobile home comparables, all mobile home comparables must be mobile home structure types.  If the mobile home was built prior to 1977 then all comparables must also be pre-1977.  If the mobile home was built after 1977 then all comparables must also be post-1977.

- If the BPO is done using NADA plus the value of the land, the appraiser can determine the value of the land based on comparables for similar parcels of land in the area and add it to the NADA value for the make, model and year of the mobile home to determine the pre-storm value.  If there is no way of determining the age of the home, the 1977 NADA value for the make and model is used.

- If the year, make and model are not known and all pre-storm value sources have been exhausted, the case is referred to OCD to determine how best to estimate the value.

- If the mobile home has a stick built addition, the pre-storm value of the mobile home is determined as follows:
    - PSV = Appraised value of land (*plus*) NADA value of mobile home (*plus*) $85 per square foot allowance for the stick built addition[41]

- *Estimated cost of damage*
    - o Damage to manufactured housing (mobile home) is confirmed through home evaluation.

---

[41] Version 6.1, Revision 18, November 6, 2008



# Homeowner Policies Version 7.0

o   Damage estimate equals per square foot allowances established in protocols for manufactured homes.

- *Other compensation*
  - o   *FEMA Individual Assistance (FEMA IA)*
  - o   *FEMA National Flood Insurance Program (NFIP) Insurance*
  - o   *USDA*
  - o   *Private Insurance*

- *Legal fees*

## 14.2 Calculation

### 14.2.1 Options

- Applicants of manufactured homes on owned land
  - o   Applicants may select one of the three program options - Option 1: Stay, Option 2: Relocate or Option 3: Sell.
  - o   Applicants may receive the following benefits:
    - ▪   Option 1: Compensation Grant, Elevation incentive, and Additional Compensation Grant
    - ▪   Option 2: Compensation Grant and Additional Compensation Grant
    - ▪   Option 3: Compensation Grant

### 14.2.2 Compensation Grant Calculation

The compensation grant calculation is the same as the calculation for owners of site built homes.

### 14.2.3 Elevation Incentive Calculation

- **Applicants eligible to and choosing the option to elevate**
  - o   The applicant's *Elevation incentive* is the lesser of the following:
    - ▪   *Road Home* available balance = $150,000 (minus) *Compensation grant*
    - ▪   Elevation allowance for manufactured housing (*$20,000*)[42]
- The award amount is based on the type of structure at the time of the storm and not the type of structure that may be built to replace the damaged structure[43].

*NOTE:* If the structure is a mobile home with a site built addition the elevation allowance is $20,000.  If the structure is a site built home with a mobile home addition the elevation allowance is $20,000[44].

### 14.2.4 Additional Compensation Grant Calculation

The ACG grant calculation is the same as the calculation for owners of site built homes.

---

[42] Version 6.1, Revision 21, November 6, 2008
[43] Version 6.1, Revision 24, November 6, 2008
[44] Version 6.0, Revision 11, July 9, 2008

 **Homeowner Policies Version 7.0**

## 15  Manufactured housing (mobile homes on leased land)

### 15.1 Inputs

- *Pre-Storm Value*
  - o *Determination:*
    - A pre-storm appraisal of the value of the home only provided by the applicant and completed by a Louisiana licensed appraiser on or after January 1, 2000 and up until date of storm.  The appraisal must reflect the value of the damaged residence on or after January 1, 2000.  A value from a pre-storm appraisal is adjusted to reflect a value as of 2nd quarter 2005 using a price appreciation index published by HUD's Office of Federal Housing Enterprise Oversight ([www.ofheo.gov](www.ofheo.gov)).  If no pre-storm appraisal was conducted on or after January 1, 2000 and up until the date of the storm, the pre-storm value is based on a Broker's Price Opinion (BPO) or a *Road Home* appraisal of pre-storm value.

    - If no pre-storm appraisal is provided by the applicant, pre-storm value is based on a post-storm appraisal of pre-storm value of the value of the home only provided by the applicant and completed by a Louisiana licensed appraiser.  The applicant's post-storm appraisal of pre-storm value will be validated against *The Road Home's* estimate of market value provided by an appraiser or a broker's price opinion (BPO) to determine if it is in an acceptable range.  If the value of the applicant ordered appraisal is not within an acceptable range, *The Road Home* will not use the applicant provided post-storm appraisal.

    - If no post-storm appraisal of pre-storm value is provided by the applicant or the post-storm appraisal is not valid, pre-storm value is based on an appraisal of the value of the home only from a third party appraisal obtained from a lender or government agency and completed since January 1, 2000.  The third party appraisal is adjusted to reflect a value as of 2nd quarter 2005 using a price appreciation index published by HUD's Office of Federal Housing Enterprise Oversight ([www.ofheo.gov](www.ofheo.gov)).  If there is more than one pre-storm appraisal available for the property, *The Road Home* will use the highest value.

    - If no third party appraisal from a lender or government agency is available, pre-storm value is based on a pre-storm market analysis (2055 appraisal) of the value of the home only ordered by *The Road Home* from a Louisiana licensed appraiser.  All mobile home comparables must be mobile home structure types.  If the mobile home was built prior to 1977 then all comparables must also be pre-1977.  If the mobile home was built after 1977 then all comparables must also be post-1977.

    - If no pre-storm market analysis is available, pre-storm value is based on a broker's price opinion (BPO) of the value of the home only which includes a drive-by of the property and the surrounding neighborhood using



# Homeowner Policies Version 7.0

manufactured housing comparables and subtracting the value of the land. All mobile home comparables must be mobile home structure types.  If the mobile home was built prior to 1977 then all comparables must also be pre-1977.  If the mobile home was built after 1977 then all comparables must also be post-1977.

- If no BPO is available, pre-storm value is based on the *NADA Manufactured Housing Appraisal Guide* value of the manufactured housing.  If there is no way of determining the age of the mobile home, the 1977 NADA value for the model is used.

- If the year, make and model are not known and all pre-storm value sources have been exhausted, the case is referred to OCD to determine how best to estimate the value.

   o NOTE:  While appraisals, market analyses and BPOs are acceptable sources of PSV if they separate the value of the land from the home, these sources typically do not make this distinction.  The value typically used for a mobile home on leased land is the NADA value rather than an appraisal, market analysis or a BPO and therefore the only PSV in the file may be the NADA value.

- If the mobile home has an addition, the pre-storm value is determined as follows:
  - PSV = NADA Value of mobile home (*plus*) $85 per square foot allowance for addition[45]

- *Estimated cost of damage[46]*
   o Damage to manufactured housing (mobile home) is confirmed through home evaluation.
- Damage estimate equals per square foot allowances established in protocols for manufactured homes.

- *Other compensation*
   o FEMA Individual Assistance (FEMA IA)
   o FEMA National Flood Insurance Program (NFIP) Insurance
   o USDA
   o Private Insurance

- *Legal fees*

## 15.2 Calculation

### 15.2.1 Options

Manufactured housing (mobile home) applicants on leased land are eligible for Option 1 Compensation grant and Additional Compensation Grant amount.

---

[45] Version 6.1, Revision 18, November 6, 2008
[46] Version 6.2, Revision 25, April 13, 2009



# Homeowner Policies Version 7.0

For manufactured housing (mobile home) applicants in a leased land situation, there is no cash sale transferring ownership of the home from the applicant to the Louisiana Land Trust and there are no program requirements with respect to owning and occupying replacement property in the State of Louisiana.  Applicants are obligated to comply with local and state laws to remove the structure from the property.

Note: Applicants who proceed to closing as a site built home on leased land who subsequently obtains full ownership of the property on which their damaged residence is or was located are eligible for the elevation incentive as calculated for site built homes on owned land. [47]

### 15.2.2 Calculation of Benefits

The Option 1 calculation of benefits is the same as the calculation for owners of single units.

## 16   Condominiums

### *16.1 Program Requirements*

### 16.1.1 Special Application Documents for Condominiums

- Applicants must report insurance and FEMA payments paid from
  - A hazard and/or flood policy or by FEMA for  structural damages related to the condominium <u>unit</u>
  - Paid directly to applicant from the Condominium Association as a pro-rata share of benefits paid to the Association
- If third party verified information is not available, applicant must provide supporting documentation from the insurance company to support payments paid or sign an affidavit if supporting documentation cannot be provided.
- The total payment from the insurer and from the Condominium Association are used in the calculation of Road Home benefits
- Condominium owners sign a *Road Home* Grant Recipient Affidavit.

### *16.2 Options*

- After March 3, 2008, condominium applicants are not eligible for Option 2 or Option 3 assistance.  As of March 3, 2008 condominium owners are eligible for Option 1 Compensation Grant and Additional Compensation Grant.
- All condominium owners sign a covenant agreement at closing that requires:
  - Repayment of any further insurance proceeds
  - If there is new construction on the site in the future, the condominium must meet building codes.
  - This covenant agreement does not impose any occupancy requirements on the applicant.

---

[47] Version 6.2, Revision 26, April 13, 2009

 **Homeowner Policies Version 7.0**

### 16.3 Compensation Grant

#### 16.3.1 Inputs

- *Pre-storm value*
  - ○ The pre-storm value is determined based on the following tiered approach:
    - A pre-storm appraisal provided by the applicant and completed by a Louisiana licensed appraiser on or after January 1, 2000 and up until the date of the storm.  The pre-storm appraisal must also reflect the value of the damaged residence on or after January 1, 2000 and up until the date of the storm.  A value from a pre-storm appraisal is adjusted to reflect a value as of 2nd quarter 2005 using a price appreciation index published by HUD's Office of Federal Housing Enterprise Oversight (www.ofheo.gov).

    - If no pre-storm appraisal is provided by the applicant, pre-storm value is based on a post-storm appraisal of pre-storm value provided by the applicant and completed by a Louisiana licensed appraiser.  *The Road Home* began accepting post-storm appraisals from applicants on December 30, 2006.  The applicant's post-storm appraisal of pre-storm value will be validated against *The Road Home's* appraisal to determine if it is in an acceptable range.  If the value of the applicant ordered appraisal is not within an acceptable range, *The Road Home* will not use the applicant provided post-storm appraisal.

    - If no post-storm appraisal of pre-storm value is provided by the applicant or the post-storm appraisal is not valid, pre-storm value is based on an appraisal from a third party appraisal obtained from a lender or government agency and completed since January 1, 2000.  The third party appraisal is adjusted to reflect a value as of 2nd quarter 2005 using a price appreciation index published by HUD's Office of Federal Housing Enterprise Oversight (www.ofheo.gov).  If there is more than one pre-storm appraisal available for the property, *The Road Home* will use the highest value.

    - If no third party appraisal from a lender or government agency is available, pre-storm value is based on a pre-storm market analysis ordered by *The Road Home* from a Louisiana licensed appraiser.

- **Estimated cost of damage**
  - ○ The estimated cost of damage is determined by treating each unit as an individual property with its own allowances based on the square footage of the unit and a pro rata share of any common structural elements.  Interior building components that are the responsibility of the unit owner (repairs from the wallpaper "in" and "above" the subfloor) shall be included in the individual unit's count.
  - ○ *Types of home evaluations:*  The estimated cost to repair and the estimated cost to rebuild are determined with a home evaluation conducted by *The Road Home.*  Home evaluators will visit every home involved in the program to determine an estimated cost to repair or rebuild.  There are 2 types of home evaluations:

 **Homeowner Policies Version 7.0**

- ▪ *Evaluation Type 1, used in calculation if damage to home is equal to or greater than 51% damaged:* A type 1 evaluation is based on a dollar amount multiplied by the square footage of the unit and a prorated percentage of the residential square footage of the condominium complex. The dollar amount shall be representative of the cost of rebuilding for multi-family properties. The cost for the common structural elements shall be prorated based on the total square footage of the building and the square footage of the unit. This percentage shall be applied to the cost estimate for repairing or replacing the common structural elements for the building, and added to the estimate for repairing the unit.  The cost per square foot is $130.

- ▪ *Evaluation Type 2, used in calculation if damages to home are less than 51% damaged:* A type 2 evaluation identifies work to be done in the individual unit and on common structural elements of the building in which the unit resides. Home Evaluation inspects the unit  and generates an estimate based on the cost of repairing or replacing various home components to a modest standard, taking into account items such as the type of construction, the number of items to be repaired or replaced, and sizes and dimensions. The Home Evaluator also estimates the actual costs associated with repairing or replacing the common structural elements of the building in which the unit resides. The cost for the common structural elements shall be prorated based on the total square footage of the building and the square footage of the unit. This percentage shall be applied to the cost estimate for repairing or replacing the common structural elements for the building, and added to the estimate for repairing the unit.

- o *Determination of Evaluation Type:* Home evaluators will visit every home involved in the program to determine the estimated cost to repair/rebuild which will allow *The Road Home* program to classify the property as either qualifying for Evaluation Type 1, estimated cost to rebuild or Evaluation Type 2, estimated cost to repair.  The Evaluation Type used to generate an estimated cost to repair/rebuild depends on the percentage damage to the home, which is determined as follows:

The home evaluator will complete both Evaluation Types.  The percentage damage will be determined by the following calculation:

*(Evaluation Type 2 Cost Estimate/Evaluation Type 1 Cost Estimate) x 100 = % Damage*

If the *Road Home* percentage damage is <u>equal to or greater</u> than 51%, then an <u>Evaluation Type 1 Cost – Estimated Cost to Rebuild</u> is assigned to the property.



# Homeowner Policies Version 7.0

If the *Road Home* percentage damage is <u>less than</u> 51%, then an <u>Evaluation Type 2 Cost – Estimated Cost to Repair</u> is assigned to the property.

If the unit has been <u>cleared or demolished</u> or the home evaluator finds it otherwise impossible to complete an Evaluation Type 2, the home evaluator will make a note that Evaluation Type 2 could not be completed and complete Evaluation Type 1. For purposes of determining funding assistance calculations, unit is considered greater than or equal to 51% damaged.

- Other Compensation
  - o **Insurance (Private Insurance or NFIP):** Louisiana law stipulates that insurance on condominium properties be carried through the associations. Insurance payouts from their association for the structural components of their unit and the owner's prorated share of the common structures will be considered a duplication of benefits and the amount will be deducted from the award calculation.
    - ▪ *Insurance, Individual Unit*: If an individual unit owner maintained a separate insurance policy on their unit, the payouts received from that policy for the structural elements will be considered a duplication of benefits and the amount will be deducted from the award calculation.
    - ▪ *Insurance, Association*: The amount of insurance payouts, received by the Condo Association, and allocated towards the repair of common structural elements shall be considered a duplication of benefits and this amount shall be deducted from the award calculation, based on the pro-rated share owned by *The Road Home* applicant. Insurance payouts, received by the Condo Association and allocated towards the repair of the individual unit's structural elements shall be considered a duplication of benefits and the amount will be deducted from the award calculation.
  - o *FEMA IA*
  - o *USDA*

## 16.3.2 Calculation

The calculation of benefits is the same as the calculation for owners of single unit structures except that the insurance penalty is applied if the Association failed to carry hazard insurance or, if located in the 100 year flood plain, flood insurance for the unit.

## *16.4  Additional Compensation Grant (ACG)*

Owners of a condominium unit are eligible to receive an Additional Compensation Grant under Option 1. Eligibility and calculation of the Additional Compensation Grant is the same as applicants of single family units.



# Homeowner Policies Version 7.0

## 17 Applicants Who Sold Home Prior to August 29, 2007[48], [49]

### 17.1 Inputs

- *Pre-storm value*
  - The determination and verification of the pre-storm value for applicants who sold their home prior to August 29, 2007 is the same as the pre-storm value hierarchy in place for single units as of and after January 14, 2007.
- *Other compensation*
  - *FEMA Individual Assistance (FEMA IA)*
  - *FEMA National Flood Insurance Program (NFIP) Insurance*
  - *USDA*
  - *Private Insurance*
- *Proceeds from Sale of Home*
  - The determination of "proceeds from sale of home" is the value as evidenced in the HUD 1 Settlement Statement and calculated as follows: (Line 401) minus (Line 502) = "Adjusted Sales Price." Applicants who do not submit a HUD 1 Settlement document are contacted and provided the opportunity to submit it. If the applicant is unable to submit a HUD 1 Settlement then *The Road Home* uses the gross sales price listed on the IRS 1099 form as the "proceeds from sale of home."
- *Legal fees*

### 17.2 Calculation

#### 17.2.1 Options

Applicants who sold their home prior to August 29, 2007 are eligible for the compensation grant. They are not eligible for an Additional Compensation Grant or an Elevation Incentive.

#### 17.2.2 Calculation of Benefits

- Choice #1: Own and occupy another home in Louisiana:
  - The applicant's *compensation grant amount* is their uncompensated loss of value up to $150,000
    - Uncompensated loss of value = *Pre-storm value* (minus) any *other compensation* the applicant(s) received for loss to the structure (minus) *proceeds from sale of home*
  - *Insurance penalty deduction:* All applicants were required to carry hazard insurance. If an applicant was located in the flood plain, the applicant was required to carry flood insurance, except where community opted out. If the applicant did not carry the appropriate insurance, 30% is deducted from the applicant's compensation grant amount.

- Choice #2: Choose not to be an owner-occupant in Louisiana:

---

[48] Version 6.1, Revision 19, November 6, 2008
[49] Version 6.2, Revision 32, April 13, 2009

 **Homeowner Policies Version 7.0**

- o The applicant's *compensation grant amount* is a percentage of their uncompensated loss of value up to $150,000
  - ▪ Percentage of Uncompensated loss of value = 60% of *Pre-storm value* (minus) *other compensation* the applicant(s) received for loss to the structure (minus) *proceeds from sale of home*
- o *Insurance penalty deduction:* All applicants were required to carry hazard insurance.  If an applicant was located in the flood plain, the applicant was required to carry flood insurance, except where community opted out.  If the applicant did not carry the appropriate insurance, 30% is deducted from the applicant's compensation grant amount.

## 18  Assignment

Assignment is the act of transferring financial benefits of *The Road Home* program from the original eligible applicant to a new applicant.

### 18.1 Eligibility requirements

- *Authorized to assign rights:* The **Original Owner** in possession of the property at the time of the storm and meets all other eligibility requirements for the Homeowner program may elect to assign their rights to benefits from the Homeowner program.  These rights can only be assigned one time.
- *Eligible to have rights assigned to them:* The new owner - **Assigned Owner** - who has acquired, or is acquiring a home from an applicant who is otherwise determined to be eligible for the Homeowner program (**Original Owner**) and will agree to the covenant requirements of the Homeowner program.
  - o *NOTE:* Mobile and site built homeowners on leased land are not eligible to assign their rights[50].
- *Date Assignment policy in effect:* Rights to Homeowner program benefits can be assigned as of the date of the August 29, 2005 but before benefits are paid.  The sales transaction or Act of Donation or Quit Claim Deed between the **Original Owner** and the **Assigned Owner** must be complete at the time benefits are transferred to the new owner.

### 18.2 Program requirements

### 18.2.1 Application

- The *Original Owner* must submit the application.
- The *Original Owner* must work in coordination with the *Assigned Owner* to provide information about the assigned owner and legal proof of the Assignment.
- Both the *Original Owner* and the *Assigned Owner* must present credentials to *The Road Home* program and have identity information collected.

---

[50] Version 6.1, Revision 17, November 6, 2008

 **Homeowner Policies Version 7.0**

### 18.2.2 Legal documentation

The following legal documentation is required to execute Assignment of Homeowner program benefits:

- *Road Home* legal assignment authorization form entitled "Assignment of *Road Home* Grant Proceeds" or legal equivalent prepared by attorney and signed by both *Original Owner* and *Assigned Owner*.
- Assignment of rights executed in sales agreement or Act of Donation or Quit Claim Deed between the *Original Owner* and the *Assigned Owner*.

    At closing, the *Assigned Owner* signs the legal documents associated with Option 1: Stay and the *Assigned Owner* receives the funding award.

### *18.3 Calculation*

The *Assigned Owner* is eligible for Option 1: Stay benefits including:

- Compensation Grant
- Elevation incentive
- Additional Compensation Grant if both the *Original Owner* and the *Assigned Owner* are determined at or below 80% AMI and eligible for the Additional Compensation Grant. The calculation is based on the information provided by the *Original Owner* on the application. *Proceeds from sale of home,* listed under *Other Compensation,* are not deducted from the grant assistance amount.

The *Assigned Owner* is not eligible for Option 2: Relocate or Option 3: Sell benefits.

### *18.4 Appeals*

The *Assigned Owner* is not allowed to submit an appeal to *The Road Home* or to the State of Louisiana Office of Community Development.[51]

### *18.5 Revoking an Assignment*

If an assignor or assignee wants to revoke an assignment that has been executed and submitted to *The Road Home* program the assignee and assignor must provide a legal document signed by both that officially rescinds the assignment[52].

## 19  Murphy Oil Spill

Applicants located in the Murphy Oil zones are eligible for the Homeowner program.  Some applicants participated in a class action settlement.  Any settlements received under the terms of the class action are not considered a duplication of benefit and are not deducted from funding assistance awards.

Applicants choosing Option 1 are processed like other Option 1 applicants.  For applicants electing Option 2 or Option 3, *The Road Home* program must receive notification from Murphy Oil that the home has been remediated prior to going to closing and receiving funding assistance awards.

---

[51] Version 6.1, Revision 16, November 16, 2008
[52] Version 6.2, Revision 29, April 13, 2009



# Homeowner Policies Version 7.0

Owners who are located in the Murphy Buy Out Zone may choose to have their home purchased by Murphy Oil. Applicants who choose to have their home purchased by Murphy Oil are eligible for assistance from *The Road Home through the Sold Home Program*[53].

## 20  Agriculture Street Superfund Site[54]

Applicants with damaged residences located in the Agriculture Street Contour on a property that has been declared a Superfund site by the U.S. Environmental Protection Agency are eligible for Option 1 benefits. These applicants cannot choose Option 2 or 3. Applicants with damaged homes located in the Superfund site sign the Option 1 covenant at closing with an additional rider to the covenant. The rider removes re-occupancy requirements if the applicant chooses not to reoccupy. For applicants who choose to reoccupy they must:

- Maintain flood insurance from the date the property is first insurable (if located in a flood zone)
- Comply with building code requirements
- Comply with Advisory Base Flood Elevation standards

## 21  Benefit Selection Process

Applicants can change their benefit option selection up to the time of closing and signing the closing documents.

### 21.1 Letters

Eligible applicants will receive one of three letters depending on their funding assistance calculations:

- *Benefit selection letter:* This letter is sent to eligible applicants who qualify for a compensation grant and/or an Additional Compensation Grant (and may also be eligible for and qualify for an elevation incentive)
- *Elevation incentive letter:* This letter is sent to eligible applicants who qualify for an elevation incentive and do not qualify for a compensation grant or Additional Compensation Grant
- *No funding letter:* This letter is sent to eligible applicants who do not qualify for any funding assistance from the Homeowner program. Applicants who receive a No funding letter are placed in inactive status. If an applicant(s) funding assistance calculation changes and the applicant(s) qualifies for funding assistance, the applicant(s)' file is taken out of inactive status.

## 22  Closing for Option 1: Stay where land is owned

### 22.1 Documents Executed at Closing

The following closing documents are executed for applicants of single units, town homes, double units and manufactured housing where land is owned who are choosing Option 1: Stay:

---

[53] Version 7.0, Revision 38, November 02, 2009
[54] Version 6.0, Revision 1, July 9, 2008



# Homeowner Policies Version 7.0

- *Disbursement Statement.*
- *Declaration of Covenants Running with the Land:* Applicant(s) must comply with the terms of the covenant within 3 years from date of closing.
- *The terms of the covenant stipulate that the applicant(s) must:*
  - o Use the property within 3 years from date of closing as a primary residence and property may not be used for any other purposes (such as rental and/or business purposes).
  - o Carry hazard insurance as of date of occupancy.
  - o Carry flood insurance in perpetuity or for maximum period permitted by law if located in the flood plain within 3 years of date of closing.
  - o Repairs completed prior to the execution of the covenant must conform with the minimal local building codes in place at the time the repairs were made.  Repairs and/or rebuilding completed after the execution of the covenant must conform to the minimum standards set by the 2003 International Residential Building Code.
  - o Comply with BFEs adopted by local government.
  - o Applicants who fail to meet the terms of the covenants are required to pay back the entire grant amount.
- *Grant Agreement.*
- *Grant Recipient Affidavit.*
- *Limited Subrogation Agreement:* Applicant agrees to assign all future payments received for Hurricane Katrina and/or Rita property damage from Homeowners insurance or flood insurance on the residence, excluding contents, and all federal assistance payments to the Office of Community Development up to the amount of grant assistance received through *The Road Home Program*.  Recorded prior liens are senior to the limited subrogation agreement.
- These documents were executed for all applicants without mortgages choosing Option 1 beginning on April 2, 2007.  These documents were executed for all applicants, with and without mortgages choosing Option 1 beginning on Direct Disbursement Acknowledgment Form (for applicants with lenders):  Applicant certifies that they have read and understand their rights, responsibilities and obligations to their lender and that their existing mortgage loan documents may impose conditions and obligations related to the use of their *Road Home* funds.
- Acknowledgment Form - Receipt for Instructions for Filing an Appeal
- Affidavit of Indemnity – As of April 2008, an Affidavit of Indemnity is executed for all Option 1 applicants who are unable to get all owners of record to attend or be represented at closing.
  April 11, 2007.

Applicants who chose Option 1 and closed prior to the implementation of the new program requirements receive the new revised covenant agreement to sign and return to the program for recordation.  Once the new covenant agreement is recorded, the old covenant agreement no longer applies for these applicants.

## 22.2 Payment Deductions at Closing

Payments that may be deducted from the applicant's grant assistance at closing:



# Homeowner Policies Version 7.0

- Property taxes, including fines, and including a pro-rata amount due for the current year through the date of closing
- Tax liens (Federal, State and local)
- SBA loan funds that SBA determines are a duplication of benefit
- Recordation fees

## 23  Closing for Option 2: Relocate where land is owned

### 23.1 Replacement Property Program Requirements

Applicants choosing Option 2 receive full Option 2 grant award amount at closing regardless of whether or not the applicant owns and occupies a replacement property in the State of Louisiana at the time of closing.  Option 2 applicants are required to sign the Option 2 Grant Agreement which requires them to own and occupy a new home in the State of Louisiana within 3 years, to notify the State when this obligation has been fulfilled, and, upon fulfilling this obligation, to sign the Replacement Home Affidavit before a notary and two witnesses and provide the appropriate supporting replacement property documentation described in Section 23.2.

Applicants who are unable to comply with the program obligations described in the Option 2 grant agreement must forfeit the difference between the Option 2 award amount they received and their Option 3 funding award and convert to an Option 3 applicant.  Applicants have 1 year from date Option 2 grant agreement is executed to return the difference without paying interest.  If applicant converts to an Option 3 after 1 year anniversary of grant agreement execution, applicant must forfeit difference plus interest with interest at the rates determined under Louisiana Revised Statutes 13:4202.

### 23.2 Replacement Property Documentation

In addition to signing the Replacement Home Affidavit, the applicant must submit documentation that establishes ownership of the replacement home.  Acceptable documentation includes:
- Copy of title indicating ownership as provided in LA Civil Code Article 477 (A);
- Executed HUD-1 settlement form
- Title insurance policy
- Recorded deed
- If applicant already owns replacement home, the tax record from the most recent tax year
- If applicant's replacement home is a site built or mobile home on <u>leased</u> land, bill of sale and electric permit to hook up electrical system or health permit to hook up septic system. NOTE: If an applicant decides to purchase new manufactured housing (mobile home) to replace lost manufactured housing (mobile home), the new home must meet the federal manufactured housing code, comply with the Federal Manufactured Housing Code required by HUD at the time of placement on the Property, meet the required base flood elevation requirements of the locality as applicable, and meet the State of Louisiana's anchorage and installation requirements.

### 23.3 Documents Executed at Closing

- *Settlement Sheet*

 **Homeowner Policies Version 7.0**

- *Act of Cash Sale*
- *Grant Recipient Affidavit*
- *Grant Agreement*
- *Replacement Property Affidavit* (if applicant has identified replacement property by time of closing)
- *Limited subrogation agreement:* Applicant agrees to assign all future payments received from property damage insurance or flood insurance on the residence, excluding contents, and all federal assistance payments to the Office of Community Development up to the amount of grant assistance received through *The Road Home Program.* Recorded prior liens are senior to the limited subrogation agreement.
- *1099-S Input Form*
- *Seller/borrower affidavit and indemnity*
- *Compliance and Tax Pro Rata Agreement*
- *Acknowledgment Form - Receipt for Instructions for Filing an Appeal*
- *Legal Mineral Rights Reservation (if requested by applicant)*

### 23.4 Payment Deductions at Closing

Payments that may be deducted from the applicant's grant assistance at closing:

- Property taxes, including fines, and including a pro-rata amount due for the current year through the date of closing;
- Tax liens (Federal, State and local)
- Outstanding balance on mortgages or other liens on the property
- SBA loan funds that SBA considers a duplication of benefit
- Recordation fees

### 23.5 SBA Deed Restriction

There are recorded deed restrictions on some properties that received certain relocation assistance loans from the Small Business Administration (SBA). The deed restriction prohibits owners of the property from receiving future federal emergency response and recovery funds for repairing or rebuilding on the site. According to SBA it does allow the properties to continue to participate in the National Flood Insurance Program and receive NFIP benefits, and applies only to disqualification of SBA benefits. Closing Agents have permission to close properties with the deed restriction. When providing title insurance to the Louisiana Land Trust under Option 2, the closing agents may take exception to the deed restriction in the title policy. This policy is retroactive and applies to all properties, regardless of closing date.

### 23.6 Clearance of Property

The Corp of Engineers will demolish properties that parishes determine are a threat to health and safety. If the applicant is considering selling their home to *The Road Home*, the applicant should contact their parish to see if their property qualifies for assistance. *The Road Home* program does not require properties to be cleared.

 **Homeowner Policies Version 7.0**

### 23.7 Vacating Property

Upon execution of Act of Cash sale at Closing, the applicant(s) is required to vacate their damaged property immediately.

## 24  Closing for Option 3: Sell where land is owned

### 24.1 Documents Executed at Closing

- *Settlement Sheet*
- *Act of Cash Sale*
- *Grant Recipient Affidavit*
- *Limited subrogation agreement:* Applicant(s) agrees to assign all future payments received from property damage insurance or flood insurance on the residence, excluding contents, and all federal assistance payments to the Office of Community Development up to the amount of grant assistance received through *The Road Home Program.*  Recorded prior liens are senior to the limited subrogation agreement.
- *1099-S Input Form*
- *Seller Owner Affidavit and Indemnity*
- *Compliance and Tax Pro Rata Agreement*
- *Acknowledgment Form - Receipt for Instructions for Filing an Appeal*
- *Legal Mineral Rights Reservation (if requested by applicant)*

### 24.2 Payment Deductions at Closing

Payments that may be deducted from the applicant's grant assistance at closing:
- Property taxes, including fines, and including a pro-rata amount due for the current  year through the date of closing
- Tax liens (Federal, State and local)
- Outstanding balance on mortgages or other liens on the property
- SBA loan funds that SBA considers a duplication of benefit.

### 24.3 SBA Deed Restriction

There are recorded deed restrictions on some properties that received certain relocation assistance loans from the Small Business Administration (SBA).  The deed restriction prohibits owners of the property from receiving future federal emergency response and recovery funds for repairing or rebuilding on the site. According to SBA it does allow the properties to continue to participate in the National Flood Insurance Program and receive NFIP benefits, and applies only to disqualification of SBA proceeds. Closing Agents have permission to close properties with the deed restriction.  When providing title insurance to the Louisiana Land Trust under Option 2, the closing agents may take exception to the deed restriction in the title policy.  This policy is retroactive and applies to all properties, regardless of closing date.

### 24.4 Clearance of property

The Corp of Engineers will demolish properties that parishes determine are a threat to health and safety. If the applicant is considering selling their home to *The Road Home*, the applicant should



# Homeowner Policies Version 7.0

contact their parish to see if their property qualifies for assistance.  *The Road Home* program does not require properties to be cleared.

### 24.5 Vacating Property

Upon execution of Act of Cash sale at Closing, the applicant(s) is required to vacate their damaged property immediately.

## 25   Closing for Leased Land Applicants

### 25.1 Documents Executed at Closing

The following is executed for applicants of manufactured housing (mobile homes) and site-built homes on leased land:

- *Disbursement Sheet*
- *Grant Agreement for Applicants on Non-owned Land*
- *Grant Recipient Affidavit*
- *Limited Subrogation Agreement:* Applicant agrees to assign all future payments received from property damage insurance or flood insurance on the residence, excluding contents, and all federal assistance payments to the Office of Community Development up to the amount of grant assistance received through *The Road Home Program.*
- *Acknowledgment Form - Receipt for Instructions for Filing an Appeal.*

### 25.2 Clearance of Property

*The Road Home* is providing compensation to applicants on leased land and will not clear the structure from the property.  Applicant(s) are responsible for complying with local and state laws regarding clearance of the structure from the property.

## 26   Closing for Applicants who sold home prior to August 29, 2006[55]

### 26.1 Documents Executed at Closing

- *Disbursement Sheet*
- *Sold Home Grant Agreement (only for applicants who select Choice 1):* Applicants who select Choice #1 sign a document that requires them to own and occupy another home in Louisiana within three years of the date of closing.
- *Grant Recipient Affidavit*
- *Limited Subrogation Agreement:* Applicant agrees to assign all future payments received from property damage insurance or flood insurance on the residence, excluding contents, and all federal assistance payments to the Office of Community Development up to the amount of grant assistance received through *The Road Home Program.*
- *Acknowledgment Form - Receipt for Instructions for Filing an Appeal*

---

[55] Version 6.1, Revision 19, 2008

 **Homeowner Policies Version 7.0**

## 27  Elevation Incentive Agreement

Recipients of an elevation incentive sign the *Elevation Incentive Agreement* which, among other things:

- obligates the applicant to elevate their home to comply with the Advisory Base Flood Elevation (ABFE) published by FEMA and where no ABFE has been published by the property, the property must be elevated to meet the Base Flood Elevation (BFE) shown on the community's legally adopted Flood Insurance Rate Map (FIRM).
  - Recipients must be in compliance within 3 years of the date they sign the *Elevation Incentive Agreement.*
- Includes a self-certification that states that home was not elevated at the time of the storm to a level that was in compliance with the Advisory Base Flood Elevation (ABFE) published by FEMA or, where no ABFE has been published, the Base Flood Elevation (BFE) shown on the community's legally adopted Flood Insurance Rate Map (FIRM).  *The Road Home* program does not verify this information by any other means[56].

## 28  Disbursement Schedule

All applicants receive their funding assistance in one lump sum following closing.

## 29  Second Closings and Second Disbursements

If an applicant disagrees with their funding award calculation, the applicant can choose to go to Closing and receive their current award amounts.  If *The Road Home* determines that the applicant should receive additional funding after the application file is reviewed by the Grant Review Team or Appeals Office, *The Road Home* will disburse funds through a 2nd Disbursement or 2nd Closing. Applicants who receive a second disbursement have no further rights to have their grant calculation reviewed at their initiation by *The Road Home* program or the Louisiana Office of Community Development State Appeals Office.  All applicants sign a "Final Disbursement Acknowledgment Form" to indicate that they understand and accept these terms.

The only exception to the limitation on two disbursements is for Option 2 applicants who received their Option 3 award amount at closing and have since identified their replacement property. These applicants can receive the balance between their Option 2 and Option 3 award amount with the possibility of receiving a 3rd disbursement if they are in the Grant Review of Appeals process.

See Section 30.3 for further details regarding grant review.

## 30  Post Closing

### *30.1 Option Selection Change*

### 30.1.1 Change from Option 1 to Option 2 or 3

Applicants, regardless of how many *Road Home* closings they have completed or number of disbursements they have received, are allowed to change their option from Option 1 to Option 2 or 3 post-closing. Applicants must submit request in writing to *Road Home* program to change their

---

[56] Version 6.2, Revision 29, April 13, 2009



# Homeowner Policies Version 7.0

option selection from Option 1 to Option 2 or 3. The request must be postmarked within 1 year of the date on their Option 1 closing documentation. Applicants who closed prior to the approval of this policy have 1 year from the date the policy is approved to submit request in writing to *Road Home* program to change option selection from Option 1 to Option 2 or 3. An applicant who has sold their damaged property residence since the closing cannot change from an Option 1 to an Option 2 or 3. Applicants who change from Option 1 to Option 2 or 3 post-closing are responsible for the costs associated with executing another closing. This amount is deducted from the applicant's funding award amount. Applicants must also return the difference between their Option 1 award and their Option 2 or 3 award amounts as applicable.

## 30.1.2 Change from Option 2 to Option 3

Applicants that have selected Option 2 have one year from the time of closing to change their decision and accept Option 3. If this is done **within** the one year period, the applicant will have to repay the difference in the award amount between option 2 and 3 **without** any interest due.

- If an applicant does not reverse their decision and fails to meet their obligation to own and occupy a home in the state within 3 years, the applicant must pay the difference between the total award they would have received under Option 3 versus the award they received under Option 2, **plus interest**.
- Once an applicant has closed on their grant and a replacement home has been identified, they must complete the affidavit that they have been provided to prove that they have met ownership and insurance obligations otherwise they must pay the difference between the total award they would have received under Option 3 versus the award they received under Option 2, **plus interest**.

## 30.1.3 Change from Option 3 to Option 2

Applicants, regardless of how many *Road Home* closings they have completed or number of disbursements they have received, are allowed to change their option from Option 3 to Option 2 post-closing.  Applicants must submit request in writing to *Road Home* program to change their option selection from Option 3 to Option 2.  The request must be postmarked within 1 year of the date on their Option 3 closing documentation.  Applicants who closed prior to the approval of this policy have 1 year from the date the policy is approved to submit request in writing to *Road Home* program to change option selection from Option 3 to Option 2. Applicants who change from Option 3 to Option 2 post-closing are responsible for the costs associated with executing another closing. This amount is deducted from the applicant's funding award amount.

## *30.2 Assuming covenant requirements*

After funds have been disbursed to an applicant who selected Option 1, an applicant can choose to sell their home during the term of the covenant to a buyer who is willing to assume the covenant requirements.

- The new owner is subject to all the covenant obligations which run with the land.
- The 3 year owner occupancy terms of the covenant do not start over when title is transferred but the new owner is responsible for fulfilling the remaining covenant obligation.



# Homeowner Policies Version 7.0

- The covenant requirements can be assigned as many times as the current applicant wishes.

### 30.3  Grant review and additional disbursements[57], [58]

During the final grant review following closing, there are sometimes small changes in values used to calculate the grant award.  Additional disbursements will only be provided when the disbursement is $50.00 or more.

After receiving a second disbursement, applicants are no longer allowed to challenge their funding assistance award calculation through the resolution process and all appeals rights are forfeited.  In some cases an applicant may receive more than 2 disbursements as the result of post-closing grant review in which a 3rd disbursement is provided to an applicant as the result of *The Road Home's* review of a file.

 Note that Option 2 applicants who closed and received their Option 3 award amount prior to policy change and who choose to receive the outstanding balance are not considered second disbursements.

## 31  Anti- Fraud and Compliance Policies

*The Road Home* program reserves the right to investigate allegations regarding eligibility and grant amounts.  Investigative reports are reviewed by Homeowner program managers who make recommendations to the Deputy Director of the Homeowner Assistance program for review.  The Deputy Director is authorized to make a finding that a preponderance of the evidence establishes the applicant does not meet program eligibility requirements regarding ownership, occupancy, or damages sustained.  In appropriate cases, investigative reports will also be reviewed by the Grant Review and Grant Recovery teams to determine whether some or all of the funds disbursed to the applicant should be recovered.

## 32  Compliance Period Extensions[59]

An extension of the period for compliance may be granted by OCD to Owner upon request by Owner (to the Office of Community Development) to extend the compliance period based on good cause and circumstances beyond Owner's control that precluded compliance with the provisions of this section.  OCD may require that Owner execute a corresponding extension of the terms of the covenants.  OCD may on its own, upon evidence of reasonable efforts made by Owner to occupy the property, grant an extension of the period to comply with this provision.  Evidence of such extensions must be in writing, signed by OCD and owner, and filed into the conveyance records in which these covenants were filed.

Approved Covenant extension requests will be granted for a period of one (1) year beginning on the end date of the original three (3) year covenant period. There will be a limit of two (2) extensions to the covenant period that a homeowner(s) is eligible to request; however, each

---

[57] Version 6.1, Revision 22, November 6, 2008
[58] Version 6.2, Revision 30, April 13, 2009
[59] Version 7.0, Revision 40, December 14, 2009



# Homeowner Policies Version 7.0

request will be considered on an individual basis with no consideration given to the approval/denial of the previous request. The initial extension request must be received within the original three (3) year covenant period. If a second extension is needed, the request must be received prior to the expiration of the additional year granted through the initial extension approval.

The following situations will be considered for extensions, not waivers, to the covenant compliance period:

1.  Homeowner(s) has experienced an unexpected financial hardship resulting in a household monetary situation that prevents him/her from being able to complete the necessary steps in order to re-occupy the property within the three (3) year covenant period.

2.  Homeowner(s) has experienced an emergency and/or debilitating health issue that has caused delays in completing the necessary steps to re-occupy the property within the three (3) year covenant period.

3.  Homeowner(s) has made a good faith attempt to secure a contractor/builder to complete the needed repairs to the damaged residence or reconstruct the home; however, due to uncontrollable contractor/builder delays the homeowner(s) will not be able to re-occupy the property within the three (3) year covenant period.

4.  Homeowner(s) was the victim of an unscrupulous contractor/builder where *Road Home* proceeds were unlawfully taken and construction work is not completed.

5.  Homeowner(s) has received *Road Home* proceeds but the funds have been exhausted prior to the property being returned to a livable standard within the three (3) year covenant period.

6.  Homeowner(s) has died within the three (3) year covenant period and the heirs to the property are unable to return the property to a livable standard within the three (3) year covenant period.

7.  Homeowner(s) has received military orders or job reassignment after receiving *Road Home* proceeds requiring him/her to relocate.

8.  Homeowner(s) has sold the property and transferred the covenant to the purchaser.  New owner is not able to return the property to a livable standard within the three (3) year covenant period.

9.  Homeowner filed for divorce after receiving *Road Home* proceeds and one spouse has retained grant funds with no intention of fulfilling the requirements of the *Road Home* covenant.



# Homeowner Policies Version 7.0

10. Homeowner(s) repaired/built property, acquired proper insurance, and re-occupied the property within the three (3) year covenant period; however, due to subsequent natural disaster, the property was once again made unlivable. Homeowner(s) is not able to re-occupy the property for a second time within the three (3) year covenant period.

11. Homeowner(s) repaired/rebuilt the property and later discovered that tainted Chinese drywall had been installed in the home. Homeowner(s) is not able to re-occupy the property until the issue with the tainted drywall is resolved.

**Required documentation:** For all circumstances, the homeowner(s) must provide a current building permit demonstrating the intent to repair/rebuild the property.

**Financial Hardship:** Homeowner(s) must provide income documentation in compliance with current Income Policy demonstrating that the household qualifies low-moderate income. This determination will be made independently of any previous income determination and will have no effect on any previous income determination.

**Health Issues:** Homeowner(s) must provide written documentation from a qualified medical professional demonstrating that he/she is suffering from a medical condition that precludes him/her from being able to re-occupy the property.

**Construction Delays:** Homeowner(s) must provide a signed building contract demonstrating that (1) there was an agreement to repair/rebuild the damaged residence that has since been canceled due to circumstances beyond the owner's control or (2) there is an agreement to repair/rebuild the damaged residence to a livable standard within the period of time granted by the extension to the three (3) year covenant period.

**Contractor Fraud:** Homeowner's must provide evidence of payment(s) made to contractor/builder demonstrating   the attempt to properly use *Road Home* proceeds. Additionally, the homeowner(s) must provide proof that the rebuilding/repairs were not completed (photos showing current condition of home, current estimate of reconstruction/repairs from a new contractor, etc.). Homeowner(s) must also provide evidence that he/she has notified the proper authorities of the contractor/builder accused of fraudulent practices.

**Exhausted Funds:** Homeowner(s) must provide contractor/builder invoices and/or construction material receipts demonstrating that the full amount of *Road Home* grant proceeds has been spent in the attempt to return the house to a livable standard. Additionally, the homeowner(s) must provide documentation supporting the ability to secure additional funding that will be used to return the residence to a livable standard within the period of time granted by the extension to the three (3) year covenant period – including, but not limited to: proof of a private loan or proof of a grant from a non-profit organization or other federal/state disaster recovery program that is deemed to be sufficient funds to complete the remaining steps needed to return the home to a livable standard.



# Homeowner Policies Version 7.0

**Death of Grant Recipient:**  Heir(s) to the property must provide a Death Certificate showing that the original grant recipient(s) is now deceased and proper succession documents establishing the heir(s) as the legal owner of the property. Additionally, the heir(s) will need to attest to the fact that he/she plans to establish the property as his/her primary residence within the period of time granted by the extension to the three (3) year covenant period.

**Relocation:**  Homeowner's must provide a copy of military orders or documentation from employer received after *Road Home* grant was awarded demonstrating requirement to permanently relocate.

**Assumption of Covenant:**  New owner(s) of the property must provide a recorded Act of Sale document showing that he/she has (1) purchased the property from the original grant recipient and (2) that the Act of Sale contains language transferring the covenant to the new owner(s).

**Divorce:**  Homeowner(s) must provide a court order demonstrating that one spouse retained the *Road Home* proceeds.

 **Subsequent Disaster:**  Homeowner(s) must provide proof of insurance coverage for repaired/rebuilt property; proof of loss demonstrating that the repaired/rebuilt property suffered major/severe damage from as natural disaster during the three (3) year covenant period.

 **Chinese Drywall:**  Homeowner(s) must provide documentation from a certified building inspector or engineer demonstrating that tainted Chinese drywall was installed in the home during the repair/rebuilding process.

## 33  FEMA's Severe Repetitive Loss Program[60]

There are a number of properties in the State that have been designated as Severe Repetitive Loss (SRL). SRL properties are determined by the National Flood Insurance Program (NFIP) as established by section 1361A of the National Flood Insurance Act, as amended (NFIA), 42 U.S.C. 4102a. In order to participate in a voluntary buyout program offered by FEMA and administered through GOHSEP by local Parish governments, Option 1 grant recipients will need to be released from *The Road Home* covenant.

The Parish government is responsible for notifying the State that a *Road Home* applicant has elected to participate in the SRL buyout program. Upon receipt of this notification, OCD-DRU will place a hold on the homeowner's *Road Home* application in order to ensure that no additional disbursements are made. The participating homeowner will be required to sign an acknowledgement form agreeing that, while the covenant is being released, the Grant Agreement remains in effect. Specifically, the following stipulations will remain in effect upon the release of the covenant:

      1.   The homeowner has a continuing obligation to return to OCD any additional private insurance, flood insurance, or FEMA proceeds received for hurricane damages to

---

[60] Version 7.0, Revision 42, January 28, 2010

 **Homeowner Policies Version 7.0**

the property if such proceeds were not accounted for in the calculation of the initial grant award. Pursuant to federal statute and HUD requirement for the CDBG program, a *Road Home* grant award may not duplicate any benefits received by the homeowner from private and/or flood insurance as a result of damages incurred during Hurricanes Katrina and Rita.

2. The homeowner may be required to return the *Road Home* grant to OCD if it is determined eligibility for the grant award was based on misrepresentations of facts in the application for the grant.

3. The homeowner may be required to return all or a portion of the *Road Home* grant to OCD if it is determined that the grant amount was miscalculated and, as a result of the error being corrected, the grant amount has decreased since the closing.

*The Road Home* covenant will remain on the property until the Act of Sale transferring the property to the Parish has been executed and recorded. Concurrently, an Open Space Covenant will be executed for each property where the covenant is being released and the Parish is responsible for demolition of all structures on the property within 90 days of the date of acquisition. Failure by the Parish to provide evidence of the property acquisition, execution of the Open Space Covenant, and demolition of all structures will result in OCD requiring full repayment of *The Road Home* grant.